328-07/PJG
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
SOYSAY SHIPPING CO.
80 Pine Street New York, NY 10005
(212) 425-1900
Peter J. Gutowski (PG 2200)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SOYSAY SHIPPING CO.,

       Plaintiff,      07 Civ. 7469 (JGK)

  - against -

ASTYA INVESTMENTS CO. LTD., and
PETSARO CHEMICALS AG,

       Defendants.
------------------------------------------------------------x


## PLAINTIFF SOYSAY SHIPPING'S MEMORANDUM IN OPPOSITION TO DEFENDANT PETSARO CHEMICALS' MOTION TO VACATE RULE B ATTACHMENT


Freehill Hogan and Mahar, LP.
80 Pine Street - 24th Floor
New York, N.Y. 10005
212 425-1900

Of Counsel:

  Peter J. Gutowski

NYDOCS1/292287.1

## PRELIMINARY STATEMENT

This memorandum is submitted on behalf of the plaintiff Soysay Shipping Co. ("Soysay") in opposition to the application by defendant Petsaro Chemicals AG ("Petsaro") to vacate the Rule B attachment issued in this action. For the reasons set forth below, the motion should be denied, and the attachment maintained in all respects.

## REPLY ON THE FACTS

There are no material disputed issues of fact insofar as this motion is concerned, and indeed, the facts should play little or no part in the outcome of the motion. In this respect, and insofar as the four (4) grounds upon which the attachment is based, the defendant Petsaro (i) does not challenge that the plaintiff has fairly stated a prima facie admiralty claim against it for damages; (ii) does not even allege that it could be "found" within the district; (iii) does not challenge that its property has been located here and seized pursuant to the attachment; and (iv) the claim is subject to arbitration in London. (*See*, generally, Petsaro Memorandum of Law at 1-3 and the Laffey Declaration.)

The only other fact worth mentioning is the one that Petsaro omitted -- that is, that Petsaro previously sought and obtained security for its claims from Soysay *outside the London arbitral forum*, and is now fully secured. It is a bit inconsistent, to say the least, for Petsaro to argue that Soysay's Rule B attachment here is somehow improper because the parties have agreed to arbitrate the merits in London where Petsaro previously did the very same thing by taking steps to seize the vessel in Turkey and thereby obtained full security.

In any event, as Petsaro's objections to the attachment primarily address legal issues, it is to those that we now turn.

## POINT I

## THE TWO LEGAL ARGUMENTS RAISED BY PETSARO IN SUPPORT OF VACATUR ARE UNAVAILING, AND THE ATTACHMENT SHOULD BE MAINTAINED IN ALL RESPECTS

Petsaro makes two legal arguments in support of its application to vacate. It first argues that this Court should follow Judge Sweet's decision in <u>OGI Ocean Gate Transportation</u> and vacate the instant attachment because the parties agreed to arbitrate in London. It next argues that because the arbitration had not yet been commenced at the time of this filing, the attachment is somehow premature and should be vacated. For the reasons set forth below, neither argument supports vacatur, and each is addressed below, starting with a very brief discussion of the burdens of proof.

A.  **Burden Of Proof In A Motion To Vacate.**

The plaintiff Soysay has no quarrel with Petsaro's discussion of the burden of proof at a Rule E-1 hearing (Petsaro Br. at 3-4), and for the reasons set forth below, Soysay submits that it has shouldered that burden.

B.  **Judge Sweet's Decision In *OGI Ocean Gate* Should Not Be Followed, Nor Is It Being Followed In This District.**

Turning to the substantive aspects of the motion, Petsaro first argues that this Court should follow Judge Sweet's decision in *OGI Oceangate Transportation Co. v. RP Logistics Pvt. Ltd.* 2007 WL 1834711 (S.D.N.Y. June 26, 2007) and vacate the attachment because the parties agreed to arbitrate the merits of the dispute in London. This argument should be rejected for multiple reasons, including the following:

First, and with due respect to Judge Sweet, it would appear that he misread the Second Circuit's discussion in *Aqua Stoli Shipping v. Gardner Smith Lty Ltd.,* 460 F.3d 434 (2d Cir. 2006) regarding the possible vacatur of an attachment where the defendant is otherwise available for suit in a convenient, adjacent jurisdiction. In this respect, even a cursory review of the Second Circuit's decision in *Aqua Stoli* reveals that the Court's discussion was with respect to amenability *to suit* in an adjacent federal district, not some other place in the world. In this respect, the discussion, while initially stated in terms of convenience of suit in "another jurisdiction", later makes clear that the reference was in respect to another judicial district. (*See, Aqua Stoli Id.* at 444.)

Indeed, the whole discussion flows from the Second Circuit's analysis, and rejection, of the so called "need" test first announced in *Royal Swan Navigation Co. v. Global Container Lines Ltd.,* 868 F.Supp.599 (S.D.N.Y. 1994). In *Royal Swan,* the Court considered the added element of "proof of need" in a situation where a plaintiff sought an attachment against the defendant who was otherwise available for suit in a neighboring district. Neither *Royal Swan,* nor *Aqua Stoli,* for that matter, address amenability to suit (or arbitration) in some foreign location and the decision does not stand for the proposition that an agreement to arbitrate precludes a Rule B Attachment.

On this last point, if in fact *Aqua Stoli* had stood for the proposition which Judge Sweet found it did (i.e. an agreement to arbitrate in a foreign jurisdiction constitutes a convenient jurisdiction and thus supports vacatur), the Second Circuit in *Aqua Stoli* would have vacated the attachment, *not* reinstated it. This is so because in *Aqua Stoli,* the parties had agreed to arbitrate in London, and the plaintiff sought security via Rule B in New York in aid of adjudication of the dispute in that agreed forum. If an agreement to

arbitrate provided grounds for vacatur, why would the Second Circuit in *Aqua Stoli* have reinstated the attachment, reversing the District Court's vacatur? While the case does indeed contain comment on potential grounds for vacatur in a so called cross-district attachment situation, it certainly did not give any indication that in a situation where the parties had agreed to foreign arbitration, an attachment should not be available where the other grounds are met.

Moving on to Judge Sweet's discussion in *OGI Oceangate Transportation,* it is important to note that there were a variety of grounds upon which the attachment was vacated, most notably the fact that the Court considered that the plaintiff had already obtained security for its claim. In its discussion of the convenient jurisdiction ground, the OGI Court seems to have blurred the distinction between jurisdictions and districts in reaching the erroneous conclusion that because both parties were present in a single jurisdiction where a previous arrest proceeding had taken place and could prosecute the case in Hong Kong, this was somehow a bar to the attachment under *Aqua Stoli*.

The decision in *OGI Oceangate* stands alone in this district. This Court needs no citation to the fact that the great majority of Rule B cases filed in the S.D.N.Y. involve claims subject to arbitration. No other judge in this district has followed the case, and indeed, Judge McMahon, in *Prestigious Shipping Co. v. Agro Corp. International Pty. Ltd.* 2007 U.S. Dist. Lexus 74108 (S.D.N.Y. 2007) specifically rejected Judge Sweet's reasoning, noting that the term "district" is a term of art under federal jurisprudence and refers to districts within our Federal Court System, not the world. Noting that Judge Sweet's "lone decision" holding otherwise is the only case which stands for this unusual

proposition, Judge McMahon rejected the logic in connection with an effort to vacate an attachment on the basis that the parties were jurisdictionally positioned in Singapore.[1]

As a final point, the practical ramifications of following Judge Sweet's decision would relegate Section 8 of the Federal Arbitration Act to the shredder. Under 9 U.S.C. §8, a claimant whose claim is otherwise subject to arbitration is entitled to commence the proceedings with an arrest or attachment action to obtain security, with the Court to thereafter retain jurisdiction to enforce any eventual arbitral award against the security obtained. Obviously, in any such case, the parties will have had to agree to arbitration in the underlying contract and the situs for that arbitration. According, to Judge Sweet's rationale, however, that agreement will, by virtue of the fact that the parties will both be available in the agreed forum for arbitration, preclude an attachment proceeding because by agreeing to a forum, it's convenient. This makes absolutely no sense, and flies in the face of the plain language of Section 8. If implemented, it would effectively eliminate the entire statutory provision contained in Section 8 of the Arbitration Act and penalize parties for agreeing to arbitrate by divesting them of their attachment and arrest remedies provided for by Congress in the Arbitration Act.

In any event, none of the situations described in *Aqui Stoli* are present here, reliance by Petsaro on Judge Sweet's decision is misplaced, the case has already been rejected by another district judge and should not be followed.

---

[1] For the Court's guidance, this discussion was contained in a decision denying an application for certification of a prior denial of a motion to vacate, and not in the actual decision regarding the application to vacate, but this does not detract from the clear decision to reject the rationale employed by Judge Sweet in that it has no effect on the discussion of the fallacy in the *OGI Oceangate Transportation* decision.

### C. Plaintiff's Second Argument - The Attachment Should Be Vacated Because The Arbitration Had Not Been Commenced – Is Erroneously Based Upon An Indemnity Case, And Has No Bearing On A Direct Claim.

Petsaro next argues that the attachment should be vacated because the arbitration had not been commenced at the time the action was filed. (Petsaro Br. at 5-6.) In support of this proposition, Petsaro relies primarily on Judge Chin's decision in *Sealift v. Cementos Andinos Dominicanos, S.A.* 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y., Sept. 9, 2005) for the proposition that an attachment in aid of a London arbitration which had not been commenced should be vacated. There are two fundamental reasons why the argument should be rejected, each of which are addressed below.

First, Petsaro fails to distinguish between the nature of the claim in *Cementos* (indemnity) from the claim here (direct claim for liability). In *Cementos* Judge Chin was addressing the viability of an attachment in the context of an indemnity claim that was not yet ripe and had not gone forward in London. In this context, the Court considered the viability of the attachment under the rule established by the Second Circuit in *Greenwich Marine, Inc. v. S.S. ALEXANDRA*, 339 F.2d, 901 (2d Cir. 1965) which involved the dismissal of an indemnity claim based upon the failure to state a claim and the concomitant discharge of the security relating to that claim.

In *Greenwich Marine*, the Second Circuit outlined the various factors which should be analyzed in determining whether an indemnity claim is ripe enough to support an attachment, and among those factors, the courts look to various issues such as (i) whether the underlying is being prosecuted; (ii) the likelihood of the imposition of liability; (iii) whether the party applying for the attachment has itself already put up security, etc. Judge Chin, having found that the claim was not ripe for various reasons,

elected to deny the application for security for costs in the yet to be commenced London arbitration.[2]

The claim at bar is not a claim for indemnity. It is a direct claim against Petsaro for its failure to arrange for the prompt discharge and receipt of the cargo. Petsaro itself has initiated a claim against Soysay and the Arbitration in London is not contingent on the outcome of some other proceeding as was the case in *Cementos*. As such, this is not an indemnity type situation which would trigger a *Greenwich* analysis, but instead involves a direct claim by Soysay against Petsaro which does not raise any issue of ripeness at all. Petsaro misreads the discussion in *Cementos* and fails to take into account the significant difference between an indemnity claim, (which, depending upon the circumstances, may not be ripe enough to support an attachment) from this case which involves a direct claim.[3]

Apart from the inapplicability of Judge Chin's decision in *Cementos* to our situation, Petsaro fails to consider the ramifications of Title 9 which govern an application for security in connection with a maritime claim subject to arbitration. Specifically, 9 U.S.C. §8 provides that in a cause of action which would otherwise be "justiciable in admiralty" (i.e. a case which otherwise would be subject to admiralty jurisdiction but for the agreement to arbitrate), the claimant can ***"begin his proceeding hereunder by liable and seizure of the vessel or other property of the other party***

---

[2] The security for the main claim was allowed to stand, albeit that was posted in a separate proceeding.

[3] To the extent Petsaro already has security (which it failed to mention) it is a bit disingenuous for it to suggest that this claim is not ripe enough to support a companion application for security in favor of Soysay. In any event, the arbitration case in London has indeed been commenced -- the delay being attributable in part to Soysay's difficulty securing a current and viable address for Petsaro - so the point is moot anyway, not that the indemnity rationale discussed in *Cementos* had any real bearing on this case to begin with.

*according to the usual course of admiralty proceedings*" (i.e. the claimant can begin the proceedings with an arrest or an attachment proceeding in aid of that arbitration). The whole purpose of Title 9 was to promote arbitration as an alternative to litigation. (Insert CITE). The Act specifically allows the security proceeding to precede the arbitration, and Petsaro's argument (i.e. that the attachment should be vacated because the arbitration was not commenced first) flies in the face of the specific provisions of Title 8 which authorize attachment in aid of arbitration.

Finally, the remaining cases cited by Petsaro have no bearing on this case because again, they each deal with indemnity claims, or actions which, by virtue of the nature of the cause of action, were not ripe. Petsaro does not argue that the claim is not ripe – how could it, it has already obtained security for its counter-claim. As such, the decisions cited at page 6 of the Petsaro memorandum have no bearing on this attachment.[4]

---

[4] Specifically, in the *J.K. Int'l* case, Judge Karas vacated an attachment because the plaintiff's claim was for indemnity in connection with liability for which it had not been held responsible. Considering the indemnity claim to be too tenuous to support an attachment, and utilizing the *Greenwich* criteria, the attachment was vacated. That case bears no resemblance to ours.

A similar situation is presented in *Sonito* because the contract under which the claim was brought – the so called Interclub Agreement – provided that no indemnity claim would lie down the chain of contracts until the initial claim had been paid. Since plaintiff in *Sonito* had not yet paid, the Court considered the claim not sufficiently ripe to support an attachment. Once again, that case has no bearing on our situation which involves a direct claim.

Finally, the same holds true in connection with *T&O Shipping*. Here, Judge Scheindlin vacated an attachment because the plaintiff sought security for contingent liability which had not yet been determined. In the absence of a claim for direct damages, the Court reasoned, there was an insufficient basis to support an attachment under *Greenwich*. That case has no bearing on the direct liability which Soysay claims against Petsaro.

## **CONCLUSION**

The attachment should be maintained in all respects.

Dated: New York, New York
October 23, 2007

                                          FREEHILL HOGAN & MAHAR LLP
                                          Attorneys for Plaintiff SOYSAY SHIPPING CO.

                                          By: _____
                                          Peter J. Gutowski (PG 2200)
                                          80 Pine Street
                                          New York, NY 10005
                                          (212) 425-1900