LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
ASTYA INVESTMENTS CO. LTD.
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:    (212) 490-6070
Charles E. Murphy (CM 2125)
Patrick F. Lennon (PL 2162)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SOYSAY SHIPPING CO.,

        Plaintiff,

  - against -

ASTYA INVESTMENTS CO. LTD. and
PETSARO CHEMICALS AG,

        Defendants.
------------------------------------------------------------X

ECF CASE

07 Civ. 7469 (JGK)


**MOTION FOR PARTIAL VACATUR AND**
**REDUCTION OF MARITIME ATTACHMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

ARGUMENT ..................................................................................................................................5

POINT ONE
PLAINTIFF BEARS THE BURDEN AT THE POST-ATTACHMENT
HEARING TO PROVE THAT THE ATTACHMENT IS PROPER ...........................................5

POINT TWO
THE COURT SHOULD REDUCE THE ATTACHMENT FROM
$334,428.56 TO $93,156.25 PURSUANT TO ADMIRALTY RULES E(4) AND E(6) ...............7

CONCLUSION.............................................................................................................................16

**PRELIMINARY STATEMENT**

Defendant, Astya Investments Co. Ltd. (hereinafter "Astya"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Memorandum of Law in Support of its Motion for Partial Vacatur and Reduction of the Ex Parte Order of Maritime Attachment dated August 23, 2007 (hereinafter "Order") pursuant to Rules E(4)(f) and E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter "Admiralty Rules").

At the behest of Plaintiff, Soysay Shipping Co. (hereinafter "Soysay"), on August 23, 2007 the Court issued the Order that permitted the attachment of defendants' property in the amount of $334,428.56. Soysay sought to attach Astya's property as security for Soysay's dubious claim emanating from an alleged breach by Astya of a Contract of Affreightment (hereinafter "COA") dated April 25, 2007. The COA between Soysay, as disponent owner of the M/V HALKI (hereinafter "Vessel"), and Astya, as charterer, called for the shipment of chemicals over two time periods. Soysay's substantive claims will be decided in London arbitration with English law to apply. Thus, this proceeding is ancillary to the arbitration and is for the sole purpose of obtaining security. Upon information and belief, Astya's funds in the amount of about $204,000.00 have been restrained.

Concisely stated, Soysay's claims against Astya are grossly overstated such that the Ex Parte Attachment Order should be reduced from $334,428.56 to $93,156.25 as that Order pertains to Astya. This is because the only valid prima facie admiralty claim that Soysay has alleged against Astya, which claim is denied, is for liquidated damages for demurrage in the amount of $74,525.00. When Soysay's principal claim is reduced from $184,428.56 to $74,525.00, it becomes clear that Soysay's claim for interest and attorneys' fees in the amount of $150,000.00 is also excessive.

Against this backdrop, an allowance for interest and attorneys' fees equal to 25% of $74,525.00, *i.e.*, $18,631.25, is a much more reasonable estimate of Soysay's total claim. Importantly, none of the other claims alleged by Soysay against Astya are recognized under English law and, therefore, they do not constitute valid prima facie admiralty claims. Accordingly, the Order should be reduced to $93,156.25 pursuant to Admiralty Rules E(4) and E(6).

The instant motion is one to reduce the attachment rather than one to vacate the attachment in its entirety. The reason that Astya brings its motion under Admiralty Rule E(4) in addition to Admiralty Rule E(6) concerns the parties' respective burdens of proof at the post-attachment hearing. In the context of a motion to vacate under Admiralty Rule E(4), it is the plaintiff's burden to prove that the attachment order was properly issued pursuant to Admiralty Rule B(1) and that it has properly alleged a valid prima facie admiralty claim. Under Admiralty Rule E(6), however, it is the defendant's burden to show good cause why the attachment should be reduced. In this case, Soysay has the burden of proving why the Order should not be reduced because except for its demurrage claim of $74,525.00, it has failed to allege any other valid claim against Astya. As such, the Order in its current form was not properly issued. Accordingly, the Order should be reduced as it applies to Astya.

## STATEMENT OF FACTS

For a complete recitation of facts, an explanation of the terms of the COA, and for an explanation of the applicable English law, reference is made to the supporting Declaration of Charles Robert Grant Williams and the exhibits attached thereto. A summary of the material facts follows.

On or about April 25, 2007, Soysay, as disponent owner, and Astya, as charterer, entered into a COA for the Vessel. *See COA attached to Williams Declaration as Exhibit 1.* The COA is

2

an agreement by which Soysay agreed to supply shipping tonnage to lift a series of cargos on voyage charter party terms at pre-agreed rates. The freight negotiated is consideration for not only the carrying voyage but also for a period allowed by the charter party for the loading and discharging of the vessel. This period is called laytime. The applicable laytime within which Astya had to load and discharge the cargo was sixty-six hours. The COA contained a liquidated damages provision that stated that demurrage, *i.e.*, damages for vessel delays during cargo loading and/or discharge operations, was to be calculated at the rate of $5,500 per day. Soysay has alleged that its demurrage claim against Astya is $74,525.00.

Regrettably, in addition to alleging its demurrage claim, Soysay has gone too far because it has also alleged various consequential damages as a result of the Vessel being delayed at its discharge port, which consequential damages are not recoverable under English law. That is, Soysay's damages against Astya for vessel delays after the expiration of laytime are capped at the demurrage rate of $5,500 per day. Stated differently, Soysay's other claims against Astya for consequential damages stemming from the delay, *e.g.*, (1) losses for extra fuel consumption, (2) losses for additional sailing expenses, (3) losses for cancellation of the Vessel's next employment, and (4) losses for additional port and agency expenses, are *not* recoverable under the COA or English law. As such, except for its demurrage claim of $74,525.00, Soysay has failed to allege a valid prima facie admiralty claim.

Soysay initiated this case on August 23, 2007 by filing a Verified Complaint. As explained above, Soysay sued Astya for breach of the maritime contract, *i.e.*, the COA. Soysay also sued co-defendant Petsaro Chemicals AG (hereinafter "Petsaro"), presumably on a different legal theory because Petsaro was not a party to the Soysay/Astya COA. As alleged in the Verified Complaint, Petsaro was the notify party on the bill of lading and was also the receiver of the vinyl acetate

3

monomer cargo. Soysay's suit concerns the events surrounding the discharge of the Vessel at Mersin, Turkey on or about May 22, 2007. Astya denies Soysay's claim in its entirety on the basis that the delay was a result of the contamination of the cargo at the loading port and/or the failure of the head vessel owner, *i.e.*, a company named Antigoni, and Soysay to put up a Letter of Undertaking securing the cargo-owner's claim expeditiously.

The quantum of Soysay's claim against Astya is exaggerated. At Paragraph 10 of the Verified Complaint, Soysay lists its claims as follows:

(i) Losses associated with the delay to the vessel in the sum of US$74,525 computed at the demurrage rate of US$5,500 per day;

(ii) Extra consumption of marine gas oil in the sum of US$6,639.50;

(iii) Additional sailing expenses from the original discharge port to the alternative discharge port at a lump sum rate of US$15,000;

(iv) Losses associated with the cancellation of the vessel's next employment by virtue of the delay in the sum of US$76,250;

(v) Additional port and agency expenses, Turkish legal counsel and survey fees in the sum of US$ 12,014.06; and

(vi) Legal fees in connection with the Rule B attachment hearing and the related London Arbitration proceedings (inclusive of arbitration costs and interest) estimated at US$150,000.

There has been little particularization of Soysay's claims and, in particular, no statement showing what portion of laytime was used. Likewise, Soysay has failed to present Astya with its demurrage calculation. On this basis, the details of Soysay's claim remain a matter of speculation.

As explained in the accompanying Declaration of Charles Robert Grant Williams, English solicitor for Astya who will be appearing in the London arbitration, if a charterer fails to load and discharge its cargo within the laytime allowed, then it is in breach of the charter party. An owner's remedy for such a breach is by way of liquidated damages, *i.e.*, demurrage, as provided by the

4

contract. As applied to the facts of this case, English law provides that demurrage is Soysay's sole remedy as against Astya in relation to the delay of the Vessel experienced at Mersin, Turkey.

## ARGUMENT

### POINT I

### PLAINTIFF BEARS THE BURDEN AT THE POST-ATTACHMENT HEARING TO PROVE THAT THE ATTACHMENT IS PROPER

A plaintiff that has obtained an ex parte Rule B attachment order must shoulder the burden at the post-attachment hearing to prove *inter alia* that "it has a valid prima facie admiralty claim against the defendant." See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Id.

It is the plaintiff's burden to prove that the attachment is proper. The Second Circuit Court of Appeals commented on Rule E(4)(f) in Aqua Stoli and explained the following standard:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. n5.

5

> n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

Aqua Stoli, 460 F.3d at 445.

Former Local Rule 12, to which the Second Circuit cited in note 5 of Aqua Stoli, provided as follows:

> Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper practice or a manifest want of equity on the part of the plaintiff, be entitled to an order requiring that plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with theses rules or the supplemental rules.

Furthermore, Supplemental Admiralty Rule E(6) of the Federal Rules of Civil Procedure provides, in part, that "Reduction or Impairment of Security. Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given..."

Id.

In this case, Soysay must prove that the Order was properly issued and that it has properly alleged valid prima facie admiralty claims against Soysay that total $334,428.56, *i.e.*, the amount prayed for in the Verified Complaint and the amount contained in the Order. The attachment should be reduced because the only non-frivolous claim against alleged against Astya is for demurrage in the amount of $74,525.00.

# POINT II

## THE COURT SHOULD REDUCE THE ATTACHMENT FROM $334,428.56 TO $93,156.25 PURSUANT TO ADMIRALTY RULES E(4) AND E(6)

Astya concedes that Soysay has alleged a valid prima facie admiralty claim for demurrage, *i.e.*, liquidated damages for delays in loading or discharging cargo from the Vessel, in the amount of $74,525.00. As such, the attachment order should be reduced rather than vacated in its entirety. Significantly, however, Soysay's demurrage claim is the only colorable claim alleged in the Verified Complaint. That is, none of Soysay's other four claims against Astya for consequential damages are recognized under the COA or under English law. Soysay's Verified Complaint at Paragraph 10 alleged (1) extra consumption of gas oil, (2) additional sailing expenses to an alternate discharge port, (3) losses for cancellation of the Vessel's next employment, and (4) additional port and agency expenses. These four items, none of which are recoverable under the COA, comprise $109,903.56 of Soysay's principal claim of $184,428.56. Under these circumstances where Soysay has alleged only one valid prima facie admiralty claim and not five, it is Soysay's burden of proof under Rule E(4) to show cause why the attachment order should not be partially vacated and/or reduced. Accordingly, the Ex Parte Attachment Order that permits the attachment of $334,428.56 is excessive and should be reduced to $93,156.25, which figure includes a 25% allowance for anticipated interest and legal fees.

In such cases, the Court is empowered to vacate because "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . . ." Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965). By way of further legal authority, notwithstanding that in Aqua Stoli the exact scope of the district court's vacatur power was not before the Second Circuit, the Court

7

held nevertheless that given the exceptional remedy of maritime attachments, a district court has the inherent authority to vacate an abusive or otherwise unfair attachment. See id. at 442-445. The Court so held in the context of praising Judge Leval's holding in Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119 (S.D.N.Y. 1979). "Then-District Judge Leval astutely noted, however, the possibility of abuse by the attaching party in some circumstances." Aqua Stoli, 460 F.3d at 442. In Integrated Container, Judge Leval held that where there is an "abusive use of the maritime attachment remedy…the courts may easily remedy the situation by exercising discretion to set aside an unfair attachment." Integrated Container, 476 F.Supp. at 124. Based on the facts of Integrated Container, an "across the river case," Judge Leval held that the attachment was not unfair because "there can be no doubt that the plaintiffs' need for security is real, [and] that their quest for attachment is not a tactic of harassment." Id.; see also Central Hudson Gas and Elec. Corp.v. Empresa Naviera Santa, SA, 845 F.Supp. 150, 153 (S.D.N.Y. 1994)("The Rule was not abused, inasmuch as there was a substantial risk that [plaintiff] would not be able to locate sufficient assets to satisfy its claims, which in turn were not frivolous.").

Decisions that have vacated attachments obtained to secure frivolous claims are instructive in this case where the majority of Soysay's claims are frivolous. In Rolls Royce Industrial Power, (INDIA) v. M.V. FRATZIS, 95 Civ. 2630 (CSH), 119 AMC 393, 397, 1996 U.S. Dist LEXIS 4907 (S.D.N.Y. April 15, 1996), Judge Haight held that the appropriate three-part analysis to be undertaken by the Court in such situations is as follows:

> [T]here are three questions which arise out of the authorities cited [including Admiralty Rule E(4)(f), Admiralty Rule E(6) and former Local Admiralty Rule 12] and others, to which I will come…
>
> The first: Is the plaintiffs' claim so lacking in merit as to be characterized as frivolous?

8

> If that question is answered in the negative, then one comes to the second question which is: In obtaining the attachment at issue, have the plaintiffs engaged in improper practices to such a degree, or do the circumstances reveal a want of equity so manifest, as to require that the attachment be vacated in its entirety?
>
> And the third question, if that be answered in the negative, is this: Is the amount attached excessive or is it reasonably necessary to secure the plaintiffs claims?

Rolls Royce Industrial Power, (INDIA), 119 AMC at 397.

Similarly, in Bay Casino, LLC v. M/V ROYAL EMPRESS, 1999 U.S. Dist. LEXIS 22357 (S.D.N.Y. 1999), in the context of a defendant's challenge to a maritime attachment, and where the plaintiff had furnished the court with misleading information regarding projected profits and actual costs, the court held that "plaintiff's lost profits claim is frivolous and, therefore, improperly included as part of the security." Bay Casino, 1999 U.S. Dist. LEXIS 22357 at *3-4. The Bay Casino court further held that the claim was frivolous because the very existence of the damages were uncertain, *i.e.*, where profits were speculative at best, and that recovery was unwarranted where the plaintiff could not potentially prove loss to a reasonable certainty standard. "It is well-settled that in an attachment proceeding, the plaintiff need not prove its damages with exactitude but the court must be satisfied that the plaintiff's claims are not frivolous." *Id.* at *3 citing Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235 (S.D.N.Y. 1996). Addressing New York law, the court rejected the plaintiff's lost profits claim and partially vacated the attachment because allowing security for a frivolous claim would have put the plaintiff in a better position than it otherwise would have been without the defendant's involvement. The Bay Casino court held as follows:

> Several grounds for such a finding [that the claim was frivolous] were apparent in both the parties' pleadings and in their representations to the Court in the hearing on this matter.

\*\*\*

9

> While the plaintiff has a much lighter burden of proof in this [Rule E(4)(f)] proceeding than at trial, the Court can find no basis in law or in fact to find plaintiff's claim non-frivolous…
>
> Additionally, neither in their pleadings, nor in their representations to this Court has plaintiff provided the Court with an evidentiary basis for historical profits that would indicate plaintiff's claims for lost profits constitutes anything more than bald speculation. Absent this, especially in consideration of the fact that plaintiffs are marketing…a consumer driven, highly volatile venture [,] plaintiff cannot potentially prove loss to a reasonable certainty.
>
> ***
>
> Defendants cite Rolls Royce v. Fratzis M., 1996 AMC 393, 396 (S.D.N.Y. 1995) in heralding the Court's responsibility to address the question of:
>
> > In obtaining the attachment…have the plaintiffs engaged in improper practices to such a degree or do the circumstances reveal a want of equity so manifest, as to require the attachment to be vacated in its entirety.
>
> In reducing security, this Court is mindful of its discretion under both law and equity. Since plaintiffs will not be able to prove a claim for lost profits based solely on questionable projections, unsupported by historical profits, the Court declines to secure the claim…Considering the facts at bar, this Court considers that clear guidance in determining plaintiff's lost profits claim is frivolous. Thus, plaintiff's claim for lost profits will not be considered in calculating an appropriate security.

Bay Casino, 1999 U.S. Dist. LEXIS 22357 at *4-7.

Supplemental Admiralty Rule E(6) empowers the court to reduce an excessive attachment. The Court "has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the attachment when good cause is shown." See Sea Transp. Contractors, Ltd., 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006). In Flame Maritime Ltd. v. Hassan Ali Rice Export Co., 07 Civ. 4426 (WHP) 2007 U.S. Dist. LEXIS 64470, *5 (S.D.N.Y. August 31, 2007), the Court recently held as follows:

> "Because pre-judgment attachments are usually based upon reasonable estimates and not precise facts, parties often attach amounts which are later deemed excessive in light of changes in circumstances." Dongbu Express Co., Ltd. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996). As such, "a reduction in security is 'freely granted upon a showing that the [attachment] is excessive.'" Dongbu, 944 F. Supp. at 237 (quoting 7A James W. Moore et al., Moore's Federal Practice P E14 (2d ed.

10

> 1996)); see also Fed. R. Civ. P. Supp. Rule E(6)("Whenever security is taken, the court may, on motion and hearing, for good cause shown reduce the amount of security given."); Mardas, 2007 WL 2229058, at *3 (same); Transportes Navieros y Terrestes v. Fairmount Heavy Transp. N.V., 07 Civ. 3076 (LAP), 2007 WL 1989309, at *4 (S.D.N.Y. July 6, 2007)(same).

Flame Maritime Ltd., 07 Civ. 4426 (WHP), 2007 U.S. Dist. LEXIS 64470 at *5. The Court may find "good cause" to reduce the attachment where the amount of security requested, although possibly recoverable in the underlying action, runs contrary to the contract and/or facts upon which the damages are based. Thus, when finding a defendant has shown "good cause" to reduce the attachment, the court is not required to take a position on the substantive merits of the case, or as to the recovery available under applicable foreign law. See Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006); See also, Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, 2005 U.S. Dist LEXIS 224, *5 (S.D.N.Y. 2005)(where the plaintiff's estimate of damages has been challenged, the court may use its discretion to apply a reasonable estimate of those damages). As held by Judge Scheindlin, where a "[plaintiff's] claims cannot be deemed frivolous, they should be reduced to account for estimated savings" and that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" but "the court must be satisfied that plaintiff's claims are not frivolous." Dongbu Express Co. Ltd. v. Navios Corp., 944 F.Supp. 235, 237-238 (S.D.N.Y. 1996).

The case of Sea Transport Contractors, Ltd., is illustrative. There, the plaintiff maintained that it was entitled to over 75 million dollars in damages because the contract under which its claim arose was to run "interminably" and thus, such damages could be recoverable under English Law. The court declined to take a position on plaintiff's claim under English law but found that good cause had been shown that the attachment should be reduced as it appeared that the damages

11

requested were not in accord with the contract's provisions and the relevant facts. Judge Casey reduced the amount of the attachment to a level that he viewed as reasonable and held:

> A district court has the inherent authority to vacate an attachment "upon a showing of 'any improper practice' or a 'manifest want of equity on the part of the plaintiff.'" Blake Mar., Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310, No. 05 Civ. 8033, 2005 WL 2875335, at 2 (S.D.N.Y. Oct 31, 2005)(quoting Southern District of New York Former Local Civil Rule 12 (1986)). The Second Circuit has held that the "inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." Greenwich Marine, Inc. S.S. Alexandria, 339 F.2d 901, 905 (2d Cir. 1965).

Sea Transport Contractors, Ltd., 411 F.Supp. 2d at 391. Judge Casey held that "good cause" existed per Rule E(6) to reduce the amount of the attachment where the complaint did not accurately allege the amount of damages.

Quite recently, Judge Preska examined the standard for reducing an excessive attachment under Rule E(6) in Transportes Navieros y Terrestes v. Fairmount Heavy Transport N.V., 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007). In Transportes Navieros y Terrestes, the court reduced the level of a maritime attachment from nearly $1,300,000 to $15,000 where Defendant showed good cause why $15,000 was the outside amount for which it might potentially be held liable to plaintiff in the underlying foreign proceeding. Specifically, Judge Preska held as follows:

> Alternatively, FHT has moved pursuant to Rule E(6) for a reduction of security, i.e., the release of the majority of the $ 1,256,352.84 under attachment. FHT so moves on the basis that TNT's damages "are either non-existent or grossly exaggerated." (See FHT Memo at 22.) Supplemental Admiralty Rule E(6) provides that "[w]henever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given . . . ." Fed. R. Civ. P. Supp. Rule E(6). The district court may determine what "good cause" is as the Court of Appeals has held that "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . . ." Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965).
>
> In Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235 (S.D.N.Y. 1996), the vessel charterer sued the vessel owner and obtained a maritime attachment in the

12

Southern District of New York as well as in South Korea in support of a London arbitration. The owner of the vessel moved the district court for a partial release of the funds attached in New York on the basis that the New York attachment was duplicative of the Korean attachment. Id. Judge Shira A. Scheindlin found that the charterer was oversecured and ordered a partial release of the New York attachment pursuant to Rule E(6) because the amount restrained in New York exceeded the difference between the charterer's provable damages and the amount of the Korean attachment. Id. Judge Scheindlin held that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" but noted that "the court must be satisfied that plaintiff's claims are not frivolous." Id. at 237 (citations omitted).

Similarly, in Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., No. 05-7173, 2005 U.S. Dist. LEXIS 22409, 2005 WL 2446236 (S.D.N.Y. Oct. 3, 2005), Judge Naomi R. Buchwald granted the defendant's motion for a reduction in the amount of security under Rule E(4)(f) and Rule E(6) where the plaintiff had failed to produce evidence to the court to justify the total amount of the attachment. Judge Buchwald ordered the release of the amount that was in excess of the funds for which there was sufficient evidence to justify attachment. 2005 U.S. Dist. LEXIS 22409, [WL] at *2. See also Sea Transport Contractors Ltd. v. Industries Chemiques du Senegal, 411 F. Supp. 2d 386 (S.D.N.Y. 2006) (finding "good cause" pursuant to Rule E(6) to reduce the amount of a maritime attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract).

\* \* \*

The Court accepts that TNT has met the prima facie standard for proving that it has a viable maritime attachment that can withstand a motion to vacate. However, the Court also accepts the undisputed fact that TNT failed to take any step to lift the arrest for some six months. On the basis of this undisputed fact the Court concludes that because TNT failed to act reasonably promptly upon being informed of the arrest of the Vessel by FHT, it failed in its duty to mitigate its damages, including damages it knew it would be exposed to upon its entering into the Con-Dive Charter Party after the arrest had been effected. Thus, FHT has demonstrated good cause for a reduction in the amount of the attachment pursuant to Rule E(6). Accordingly, the order of maritime attachment is modified to reflect the amount for which FHT may be potentially held responsible to TNT, which the Court estimates at $15,000, the outside amount that might be attributable to legal fees required to lift the wrongful arrest.

Transportes Navieros y Terrestes v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS

50260 at *20.

13

The above authorities stand for the proposition that it is a plaintiff's burden to properly allege valid prima facie admiralty claims and to properly estimate those claims so that the court may be satisfied that the damages alleged are reasonable. In this case, Soysay has not only overstated its damages at $334,428.56 but also it has failed to allege in its Verified Complaint valid prima facie admiralty claims in respect of (1) extra consumption of marine gas oil, (2) additional sailing expenses from the original discharge port to the alternative discharge port, (3) losses associated with the cancellation of the vessel's next employment by virtue of the delay, and (4) additional port and agency expenses. For the reasons explained herein, and for the reasons explained in the accompanying Declaration of Charles Robert Grant Williams, the single claim by Soysay that is recognized under the COA and English law is for demurrage. Specifically, Soysay has alleged in its Verified Complaint at ¶ 9 that "The Defendants failed to arrange for the prompt delivery and receipt of the cargo…" This alleged breach of the COA amounts to no more than breach through discharge delay, for which the contract sets forth the proper quantum of damages at $5,500 per day. Soysay's other claims for consequential damages are frivolous. On this basis, Soysay has not reasonably estimated, and in fact has greatly overstated, its damages in the Verified Complaint because the greatest sum to which Soysay may arguably be entitled to recover against Astya under English law is $93,156.25.

Additionally, it is noteworthy that Soysay is *not* the actual owner of the Vessel notwithstanding its allegation in Paragraph 6 of the Verified Complaint that incorrectly stated that "Plaintiff SOYSAY, in the capacity as owner of the M/T HALKI, entered into a maritime contract of affreightment with the Defendant ASTYA…" The true owner of the Vessel was a company named Antigoni. This is an important distinction because Soysay cannot claim against Astya for damages that Antigoni might have suffered for such items as (1) extra consumption of marine gas

14

oil, (2) additional sailing expenses from the original discharge port to the alternative discharge port, (3) losses associated with the cancellation of the vessel's next employment by virtue of the delay, and (4) additional port and agency expenses, etc. If these losses were suffered at all, they were suffered by Antigoni and not by Soysay. As such, Soysay is not the proper party to bring these claims. Seemingly, at best these items can be fairly categorized as contingent liabilities that are unripe and speculative. If Soysay is seeking to secure an indemnity claim against Astya, then it should have alleged indemnity in its Verified Complaint. Cases have held that Rule B attachment is not appropriate to secure unripe indemnity claims. See e.g. Bottiglieri di Navigazione SpA v. Tradeline LLC, 2007 A.M.C. 1013, 1016 (S.D.N.Y. 2007)("Finally, plaintiff argues that the Court nonetheless has discretion to uphold an attachment order over an unripe claim. There is authority suggesting the district courts have such discretion, but the scope of a district court's discretion under Rule B has been significantly narrowed by Aqua Stoli, and it is unclear whether any such discretion is available to the Court today. In any event, the Second Circuit has made it clear that such discretion may be exercised only in very compelling circumstances."). See also, JK Int'l, Pty. Ltd. v. Agriko S.A.S., 2007 A.M.C. 783, 787 (S.D.N.Y. 2007)(it is well established that a claim for indemnity requires that an actual liability be sustained by the indemnity); Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 2007 A.M.C. 1018, 1027 (S.D.N.Y. 2007)(courts in this circuit have not been receptive to contingent claims as a basis for maritime attachments and a number of district judges have vacated attachments based on claims for contingent liability). At a minimum, Soysay was required to demonstrate that it had standing to bring such claims under the circumstances where it was *not* the Vessel's owner and/or required to demonstrate very compelling circumstances to find that the contingent indemnity claims are ripe.

## CONCLUSION

For the foregoing reasons, the Court should partially vacate and/or reduce the Ex Parte Attachment Order pursuant to Admiralty Rules E(4)(f) and E(6) from $334,428.56 to $93,156.25.

Dated: October 25, 2007
New York, NY

>Respectfully submitted,
>
>The Defendant,
>ASTYA INVESTMENTS CO. LTD.,
>
>By: _/s/ Charles E. Murphy_
>Charles E. Murphy (CM 2125)
>Patrick F. Lennon (PL 2162)
>LENNON MURPHY & LENNON, LLC
>The GrayBar Building
>420 Lexington Ave., Suite 300
>New York, NY 10170
>(212) 490-6050 (phone)
>(212) 490-6070 (fax)
>cem@lenmur.com
>pfl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on October 25, 2007, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

>By: _/s/ Charles E. Murphy_
>Charles E. Murphy