```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SOYSAY SHIPPING CO.,                          :
                                              :
        Plaintiff,                            :
                                              :
                                              :   ECF CASE
        - against -                           :
                                              :   07 Civ. 7469 (JGK)
                                              :
ASTYA INVESTMENTS CO. LTD. and                :
PETSARO CHEMICALS AG,                         :
                                              :
        Defendants.                           :
------------------------------------------------------------X
```

## DECLARATION OF CHARLES ROBERT GRANT WILLIAMS

CHARLES ROBERT GRANT WILLIAMS declares under penalty of perjury under the laws of the United States of America as follows:

1. I am a partner of the law firm Thomas Cooper and a solicitor of the Supreme Court of Judicature of England and Wales. I was admitted as a solicitor in 1979, since when I have practiced in the law of international trade and shipping. I am a Visiting Professor at City University, London and a former Senior Visiting Teaching Fellow at Cardiff University. I have taught Carriage of Goods by Sea courses in both Universities. I am also a former Chairman of the British Maritime Law Association Committee on Arbitration and ADR.

2. I am instructed by Astya Investments Co Ltd ('Astya') in respect of the prospective arbitration between Soysay Shipping Co Ltd ('Soysay') and themselves in relation to the events surrounding the discharge of the MV "HALKI" at Mersin on or about 22nd May 2007. I am asked to comment on the quantum of damages claimed in the Verified Complaint presented to the United States District Court, Southern District of

New York on 23 August 2007 (the 'Complaint'). The claim is brought pursuant to a Contract of Affreightment dated 25 April 2007 made between Soysay and Astya (the 'COA') (EXHIBIT 1). The COA is subject to English Law and has an English Arbitration Clause. Thus English law is applicable to determine the rights and liabilities of the parties.

3. I should first observe that I understand from Astya that they deny the claim in its entirety, on the basis that the delay was caused in consequence of the contamination of the cargo at the loading port and Soysay's and/or the Owners failure to put up a Letter of Undertaking securing the cargo-owners claim expeditiously. I note that the only breach alleged by Soysay in the Complaint is set out in Paragraph 9 of the Complaint namely:-

   *"The Defendants failed to arrange for the prompt delivery and receipt of the cargo..."*

   In my view the alleged breach as characterised above amounts to no more than a breach though delay.

4. It is my view that the quantum claimed by Soysay is exaggerated.

5  At paragraph 10 of the Complaint, Soysay list their claims as follows:

   (i) Losses associated with the delay to the vessel in the sum of US$74,525 computed at the demurrage rate of US$5,500 per day;

(ii)   Extra consumption of marine gas oil in the sum of US$6,639.50;

(iii)  Additional sailing expenses from the original discharge port to the alternative discharge port at a lump sum rate of US$15,000;

(iv)   Losses associated with the cancellation of the vessel's next employment by virtue of the delay in the sum of US$76,250;

(v)    Additional port and agency expenses, Turkish legal counsel and survey fees in the sum of US$ 12,014.06; and

(vi)   Legal fees in connection with the Rule B attachment hearing and the related London Arbitration proceedings (inclusive of arbitration costs and interest) estimated at US$150,000.

6.  There has been little particularisation of these claims and in particular I am instructed by Astya that no statement showing the laytime and demurrage has been presented to Astya. On that basis the details of the claim made by Soysay remain a matter of speculation.

7.  In considering the sums which might be recoverable by Soysay, it is first necessary to note that the Contract incorporates the Asbatankvoy standard form charterparty terms (EXHIBIT 2) which together with the specific terms of the COA itself will set out the

3

terms for laytime and demurrage. Before I deal with the laytime and demurrage terms, I deal with the relationship between laytime, demurrage and detention.

8. The COA is in effect an agreement by which an Owner agrees to supply shipping tonnage to lift a series of cargos on voyage charterparty terms at pre-agreed rates. The freight negotiated is consideration for not only the carrying voyage but also for a period allowed by the charterparty for the loading and discharging of the vessel. This period is called Laytime. In this COA the laytime provisions are set out as a variable rate depending on the size of the shipment. The shipment on the "HALKI" was 1902.231 mt Caustic Soda and 511.900 Vinyl Acetate Monomer (EXHIBIT 3) making a total of 2,413.731 mt of cargo. It can therefore been seen that the laytime allowable is that for vessels 2,401 - 3,000 mt namely *'Total 66hrs SHINC reversible'*. 'SHINC' means Sundays and holiday are included in the counting of the time. In respect of 'Reversible Laytime', a definition can be found in the Voyage Charterparty Laytime Interpretation Rules (EXHIBIT 4). These Rules are not incorporated in the COA and so are not definitive in the interpretation of this charterparty but nevertheless give a succinct description of the concept:-

> *'Reversible laytime shall mean an option given to the charter to add together the time allowed for loading and discharging. When the option is exercised the effect is the same as the total time being specified to cover both operations.'*

Thus in this case, the Charterer has 66 hours in which to load and discharge the cargo.

9. If the Charterer fails to load and discharge his cargo within the laytime allowed, then he is in breach of charterparty. The Owners remedy for such breach is by way of liquidated damages, which are called demurrage. It can be seen that the demurrage rate is set out in the COA. The "HALKI"'s deadweight as set out in the descriptive part of the charterparty is 3,400 Summer deadweight. On that basis pursuant to the Demurrage clause the demurrage rate is US$5,500 per day pro rata. Thus the starting point is that in respect of any delay beyond the laytime permitted by the charterparty, the Owners remedy is that of demurrage calculated at US$5,500 per day.

10. As I have noted above, demurrage is a form of liquidated damages. There have been a number of English cases relating to the question as to whether or not demurrage is the sole remedy in relation to the delay of a vessel. Having considered the cases, it is my view that the position is most succinctly summed up by the judgment of Potter J in *the Bonde*[1], a copy of which is set out herewith at EXHIBIT 5. This reads as follows:

> "... *the opinion which I have formed upon analysis of the cases ... is that where a charterparty contains a demurrage clause, then in order to recover damages in addition to demurrage for breach of the Charterers' obligation to complete loading within the laydays, it is a requirement that the plaintiff demonstrate that such additional loss is not only different in character from loss of use but stems from breach of an additional and/or independent obligation."*

---

[1] Potter J. The Bonde [1991] 1 Lloyd's Rep. 136 at page 142.

11. Potter J's judgment cited ten cases. I will refer to the three most relevant cases referred to by him, commencing with the latter namely *Inverkip Steamship Co. –v- Bunge & Co.*[2] (EXHIBIT 6). In that case, it was argued that there was not only a breach by Charterers in respect of detention, but that there was a further breach by their failure to provide a cargo. The court accepted that the obligation to load and the obligation to provide a cargo were separate and distinct obligations. However, the court held that the result of a breach of either was the same. On that basis, it was considered that demurrage was the correct remedy.

12. The case of *Aktieselskabet Reidar –v- Arcos Limited*[3] (EXHIBIT 7) is a case in which it was found that damages may be allowable in addition to demurrage. In that case the vessel loaded cargo in Archangel. The cargo was to be carried to the United Kingdom. Under the United Kingdom law at that time any ship arriving in the United Kingdom after 31st October 1923 could only be loaded up to her winter drafts. If the ship was only to be loaded up to winter drafts then significantly less cargo could be loaded than would be loaded under her summer drafts. Since freight was based on the amount of cargo loaded, then this would represent a significant reduction of the freight payable to the Owners. Had the vessel loaded within laytime then the ship would have arrived in the United kingdom before the 31st October and the ship would have been able to be loaded up to her summer drafts. In the event however the ship could be only loaded up to her winter drafts. The Owners claimed both demurrage and for the deadfreight representing the difference between the freight which would have been payable on a summer drafts basis and the freight which was payable on the winter drafts basis. The Court of Appeal held unanimously that in this case, damages

---

[2] [1917] 2 K.B. 193
[3] [1927] 1 K.B. 352 (CA)

could be awarded as well as demurrage. The Court's members' reason for this finding are different but were summed up succinctly by Mocatta J in *Suisse Atlantique Societe d'Armement SA v Rotterdamische Kolen Centrale*[4] (EXHIBIT 8) when he said:-

> "the difference in freight [between the summer and winter deckloads] can be concisely stated to have been recoverable by Lord Justice Bankes as damages for failure to load in the agreed time, by Lord Justice Atkin as damages to load a full and complete cargo in the agreed time and by Lord Justice Sargent as damages to load a full and complete cargo."

It can be noted that the only judgement which could be considered authority for the proposition that damages are payable in addition to demurrage is that of Bankes LJ and the facts of that case are easily distinguishable from this case, where the only breach alleged is in fact delay.

13. In the case of *Societe d'Armement SA v Rotterdamische Kolen Centrale*[5] (EXHIBIT 9) a charter was entered into by the Owners of the vessel for the carriage of coal for a period of two years. The charterparty contained laytime and demurrage clauses. If the vessel on each of her voyages had loaded and discharged within her laytime, then the vessel would have undertaken more than the eight voyages which she in fact undertook. The Owners claimed damages as well as demurrage in consequence of this. The claim failed. It was held that they were only entitled to demurrage. I should also for completeness refer to *Chandris v Isbrandtsen Moller & Co* (EXHIBIT 10)

---

[4] (1965) 1 Lloyds Rep 166 at 176
[5] (1966) 1 LL Rep 529.

[6]where a dangerous cargo was shipped in breach of the charterparty in consequence of which the discharge was delayed. The shipowner claimed damages for delay in addition to demurrage. This argument also failed before the Court.

14. I have referred above in Paragraph 10 to Potter J's summary of the law and in particular, his comment that in order to claim damages in excess of demurrage a Plaintiff must show *"that such additional loss is not only different in character from loss of use but stems from breach of an additional and/or independent obligation."* As I have said in Paragraph 3 above, it is my view that the breach alleged is merely a breach by delay and therefore is not an additional or independent obligation. It follows that it is neither different in character from loss of use. I consider that in this case, damages in excess of demurrage are not recoverable by Soysay.

15. The next question to which I turn is the question as to whether the delay can be construed be a detention claim, in respect of which the demurrage provisions would not apply. Detention will only apply if the time for discharge has not commenced or has finished. In this case under Clause 6 of the Asbatankvoy form, laytime shall commence 6 hours after the service of the Notice of Readiness (EXHIBIT 11). According to the Statement of Facts at Mersin (EXHIBIT 12), Notice of Readiness was tendered at 17.00 hours on 22 May 2007. Laytime therefore commenced to count at 01.00 hours on 23 May. When the hoses were disconnected at 2230 on 22 May, there was still cargo on board to be discharged at Mersin. Time would therefore continue to count in accordance with the laytime and demurrage provisions.

---

[6] (1949) 83 LL L Rep 385

16. On the 1 June 2007 I understand that it was agreed between the parties that the vessel should sail to Ceyhan and to discharge the Caustic Soda there and then return the cargo back to Mersin. However this agreement was subsequent to the delay alleged and could not affect the status of the delay as a period when time was counting as laytime, alternatively as demurrage.

17. In summary, based on the particulars contained in the Complaint, which are scant, and my understanding of the claim as derived from my clients as referred to herein, the maximum claim which appears to be recoverable by Soysay pursuant to Items (i) to (v) of Paragraph 10 of the Complaint is the demurrage in the sum of US$74,525.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of October 2007 at London, England.

_____
Charles Robert Grant Williams