# EXHIBIT 2

Association of Ship Brokers
& Agents (U.S.A.), Inc.
October 1977

CODE WORD FOR THIS
CHARTER PARTY:
ASBATANKVOY

# TANKER VOYAGE CHARTER PARTY

## PREAMBLE

Place ____ Date ____

IT IS THIS DAY AGREED between ____ chartered owner/owner (hereinafter called the "Owner") of the ____ SS/MS ____ (hereinafter called the "Vessel") and ____ (hereinafter called the "Charterer") that the transportation herein provided for will be performed subject to the terms and conditions of this Charter Party, which includes this Preamble and Part I and Part II. In the event of a conflict, the provisions of Part I will prevail over those contained in Part II.

## PART I

A. Description and Position of Vessel:

Deadweight: tons (2240 lbs.) Classed:

Loaded draft of Vessel on assigned summer freeboard ft. in. in salt water.

Capacity for cargo: tons (of 2240 lbs. each) % more or less, Vessel's option.

Coated: ☐ Yes ☐ No

Coiled: ☐ Yes ☐ No Last two cargoes:

Now: Expected Ready:

B. Laydays:

Commencing: Cancelling:

C. Loading Port(s):

Charterer's Option

D. Discharging Port(s):

Charterer's Option

E. Cargo:

Charterer's Option

F. Freight Rate: per ton (of 2240 lbs. each).

G. Freight Payable to:

H. Total Laytime in Running Hours:

I. Demurrage per day:

J. Commission of % is payable by Owner to

on the actual amount of freight, when and as freight is paid

K. The place of General Average and arbitration proceedings to be London/New York (strike out one)

L. Tovalop: Owner warrants vessel to be a member of TOVALOP scheme and will be so maintained throughout duration of this charter.

M. Special Provisions:

IN WITNESS WHEREOF, the parties have caused this Charter, consisting of a Preamble, Parts I and II, to be executed in duplicate as of the day and year first above written.

Witness the signature of: ______________________________

By: ______________________________

Witness the signature of: ______________________________

By: ______________________________

PART II

1. WARRANTY—VOYAGE—CARGO. The vessel, classed as specified in Part I hereof, and to be so maintained during the currency of this Charter, shall, with all convenient dispatch, proceed as ordered to Loading Port(s) named in accordance with Clause 4 hereof, or so near thereunto as she may safely get (always afloat), and being seaworthy, and having all pipes, pumps and heater coils in good working order, and being in every respect fitted for the voyage, so far as the foregoing conditions can be attained by the exercise of due diligence, perils of the sea and any other cause of whatsoever kind beyond the Owner's and/or Master's control excepted, shall load (always afloat) from the factors of the Charterer a full and complete cargo of petroleum and/or its products in bulk, not exceeding what she can reasonably stow and carry over and above her bunker fuel, consumable stores, boiler feed, culinary and drinking water, and complement and their effects (sufficient space to be left in the tanks to provide for the expansion of the cargo), and being so loaded shall forthwith proceed, as ordered on signing Bills of Lading, direct to the Discharging Port(s), or so near thereunto as she may safely get (always afloat), and deliver said cargo. If heating of the cargo is requested by the Charterer, the Owner shall exercise due diligence to maintain the temperatures requested.

2. FREIGHT. Freight shall be at the rate stipulated in Part I and shall be computed on intake quantity (except deadfreight as per Clause 3) as shown on the Inspector's Certificate of Inspection. Payment of freight shall be made by Charterer without discount upon delivery of cargo at destination, less any disbursements or advances made to the Master or Owner's agents at ports of loading and/or discharge and cost of insurance thereon. No deduction of freight shall be made for water and/or sediment contained in the cargo. The services of the Petroleum Inspector shall be arranged and paid for by the Charterer who shall furnish the Owner with a copy of the Inspector's Certificate.

3. DEADFREIGHT. Should the Charterer fail to supply a full cargo, the Vessel may, at the Master's option, and shall, upon request of the Charterer, proceed on her voyage, provided that the tanks in which cargo is loaded are sufficiently filled to put her in seaworthy condition. In that event, however, deadfreight shall be paid at the rate specified in Part I hereof on the difference between the intake quantity and the quantity the Vessel would have carried if loaded to her minimum permissible freeboard for the voyage.

4. NAMING LOADING AND DISCHARGE PORTS.

(a) The Charterer shall name the loading port or ports at least twenty-four (24) hours prior to the Vessel's readiness to sail from the last previous port of discharge, or from bunkering port for the voyage, or upon signing this Charter if the Vessel has already sailed. However, Charterer shall have the option of ordering the Vessel to the following destinations for wireless orders:

| | On a voyage to a port or ports in |
|---|---|
| ST. KITTS | Caribbean or U.S. Gulf loading port(s) |
| PORT SAID | Eastern Mediterranean or Persian Gulf loading port(s) (from ports west of Port Said) |

(b) If lawful and consistent with Part I and with the Bills of Lading, the Charterer shall have the option of nominating a discharging port or ports by radio to the Master on or before the Vessel's arrival at or off the following places:

| Place | On a voyage to a port or ports in |
|---|---|
| LAND'S END | United Kingdom/Continent (Bordeaux/Hamburg range) or Scandinavia (including Denmark) |
| SUEZ | Mediterranean (from Persian Gulf) |
| GIBRALTAR | Mediterranean (from Western Hemisphere) |

(c) Any extra expense incurred in connection with any change in loading or discharging ports (so named) shall be paid for by the Charterer and any time thereby lost to the Vessel shall count as used laytime.

5. LAYDAYS. Laytime shall not commence before the date stipulated in Part I, except with the Charterer's sanction. Should the Vessel not be ready to load by 4:00 o'clock P.M. (local time) on the cancelling date stipulated in Part I, the Charterer shall have the option of cancelling this Charter by giving Owner notice of such cancellation within twenty-four (24) hours after such cancellation date; otherwise this Charter to remain in full force and effect.

6. NOTICE OF READINESS. Upon arrival at customary anchorage at each port of loading or discharge, the Master or his agent shall give the Charterer or his agent notice by letter, telegraph, wireless or telephone that the Vessel is ready to load or discharge cargo, berth or no berth, and laytime, as hereinafter provided, shall commence upon the expiration of six (6) hours after receipt of such notice, or upon the Vessel's arrival in berth (i.e., finished mooring when at a sealoading or discharging terminal and all fast when loading or discharging alongside a wharf), whichever first occurs. However, where delay is caused to Vessel getting into berth after giving notice of readiness for any reason over which Charterer has no control, such delay shall not count as used laytime.

7. HOURS FOR LOADING AND DISCHARGING. The number of running hours specified as laytime in Part I shall be permitted the Charterer as laytime for loading and discharging cargo; but any delay due to the Vessel's condition or breakdown or inability of the Vessel's facilities to load or discharge cargo within the time allowed shall not count as used laytime. If regulations of the Owner or port authorities prohibit loading or discharging of the cargo at night, time so lost shall not count as used laytime; if the Charterer, shipper or consignee prohibits loading or discharging at night, time so lost shall count as used laytime. Time consumed by the vessel in moving from loading or discharge port anchorage to her loading or discharge berth, discharging ballast water or slops, will not count as used laytime.

8. DEMURRAGE. [illegible]

9. SAFE BERTHING—SHIFTING. [illegible]

10. PUMPING IN AND OUT. [illegible]

11. HOSES; MOORING AT SEA TERMINALS. [illegible]

12. DUES—TAXES—WHARFAGE. [illegible]

[illegible]

13. (a) CARGOES EXCLUDED VAPOR PRESSURE. [illegible]

(b) FLASH POINT. [illegible]

14. (a) ICE. [illegible]

(b) [illegible]

15. TWO OR MORE PORTS COUNTING AS ONE. [illegible]

16. GENERAL CARGO. [illegible]

17. (a) QUARANTINE. [illegible]

(b) FUMIGATION. [illegible]

18. CLEANING. [illegible]

19. GENERAL EXCEPTIONS CLAUSE. [illegible]

20. ISSUANCE AND TERMS OF BILLS OF LADING.

(a) [illegible]

(b) [illegible]

(c) CLAUSE PARAMOUNT. [illegible]

(d) JASON CLAUSE. [illegible]

(e) GENERAL AVERAGE. [illegible]



(iv) BOTH TO BLAME. If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Owner in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder shall indemnify the Owner against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or Owner. The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or object are at fault in respect of a collision or contact.

(v) LIMITATION OF LIABILITY. Any provision of this Charter to the contrary notwithstanding, the Owner shall have the benefit of all limitations of, and exemptions from, liability accorded to the owner or chartered owner of vessels by any statute or rule of law for the time being in force.

(vi) WAR RISKS. (a) If any port of loading or of discharge named in this Charter Party or to which the Vessel may properly be ordered pursuant to the terms of the Bills of Lading be blockaded, or

(b) If owing to any war, hostilities, warlike operations, civil war, civil commotions, revolutions or the operation of international law (a) entry to any such port of loading or of discharge or the loading or discharge of cargo at any such port be considered by the Master or Owners in his or their discretion dangerous or prohibited or (b) it be considered by the Master or Owners in his or their discretion dangerous or impossible for the Vessel to reach any such port of loading or discharge. The Charterers shall have the right to order the cargo or such part of it as may be affected to be loaded or discharged at any other safe port of loading or of discharge within the range of loading or discharging ports respectively established under the provisions of the Charter Party (provided such other port is not blockaded or that entry thereto or loading or discharge of cargo thereat is not in the Master's or Owner's discretion dangerous or prohibited). If in respect of a port of discharge no orders be received from the Charterers within 48 hours after they or their agents have received from the Owners a request for the nomination of a substitute port, the Owners shall then be at liberty to discharge the cargo at any safe port which they or the Master may in their or his discretion decide on (whether within the range of discharging ports established under the provisions of the Charter Party or not) and such discharge shall be deemed to be due fulfillment of the contract or contracts of affreightment so far as cargo so discharged is concerned. In the event of the cargo being loaded or discharged at any such other port within the respective range of loading or discharging ports established under the provisions of the Charter Party, the Charter Party shall be read in respect of freight and all other conditions whatsoever as if the voyage performed were that originally designated. In the event, however, that the Vessel discharges the cargo at a port outside the range of discharging ports established under the provisions of the Charter Party, freight shall be paid as for the voyage originally designated and all extra expenses involved in reaching the actual port of discharge and or discharging the cargo thereat shall be paid by the Charterers or Cargo Owners. In the latter event the Owners shall have a lien on the cargo for all such extra expenses.

(c) The Vessel shall have liberty to comply with any directions or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any otherwise whatsoever given by the government of the nations under whose flag the Vessel sails or any other government or local authority including any de facto government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or authority or by any committee or person having under the terms of the war risks insurance on the vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations, anything is done or is not done such shall not be deemed a deviation.

If by reason of or in compliance with any such direction or recommendation the Vessel does not proceed to the port or ports of discharge originally designated or to which she may have been ordered pursuant to the terms of the Bills of Lading, the Vessel may proceed to any safe port of discharge which the Master or Owners in his or their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfillment of the contract or contracts of affreightment and the Owners shall be entitled to freight as if discharge has been effected at the port or ports originally designated or to which the vessel may have been ordered pursuant to the terms of the Bills of Lading. All extra expenses involved in reaching and discharging the cargo at any such other port of discharge shall be paid by the Charterers and/or Cargo Owners and the Owners shall have a lien on the cargo for freight and all such expenses.

(vii) DEVIATION CLAUSE. The Vessel shall have liberty to call at any ports in any order, to sail with or without pilots, to tow or to be towed, to go to the assistance of vessels in distress, to deviate for the purpose of saving life or property or of landing any ill or injured person on board, and to call for fuel at any port or ports in or out of the regular course of the voyage. Any salvage shall be for the sole benefit of the Owner.

21. LIEN. The Owner shall have an absolute lien on the cargo for all freight, deadfreight, demurrage and costs, including attorney fees, of recovering the same, which lien shall continue after delivery of the cargo into the possession of the Charterer, or of the holders of any Bills of Lading covering the same or of any storageman.

22. AGENTS. The Owner shall appoint Vessel's agents at all ports.

23. BREACH. Damages for breach of this Charter shall include all provable damages, and all costs of suit and attorney fees incurred in any action hereunder.

24. ARBITRATION. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person with precisely the same force and effect as if said second arbitrator has been appointed by the other party. In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either arbitrator may apply to a Judge of any court of maritime jurisdiction in the city above-mentioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such Judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorney's fees, and judgement may be entered upon any award made hereunder in any Court having jurisdiction in the premises.

25. SUBLET. Charterer shall have the right to sublet the Vessel. However, Charterer shall always remain responsible for the fulfillment of this Charter in all its terms and conditions.

26. OIL POLLUTION CLAUSE. Owner agrees to participate in Charterer's program covering oil pollution avoidance. Such program prohibits discharge overboard of all oily water, oily ballast or oil in any form of a persistent nature, except under extreme circumstances whereby the safety of the vessel, cargo or life at sea would be imperiled.

Upon notice being given to the Owner that Oil Pollution Avoidance controls are required, the Owner will instruct the Master to retain on board the vessel all oily residues from consolidated tank washings, dirty ballast, etc., in one compartment, after separation of all possible water has taken place. All water separated to be discharged overboard.

If the Charterer requires that demulsifiers shall be used for the separation of oil/water, such demulsifiers shall be obtained by the Owner and paid for by Charterer.

The oil residues will be pumped ashore at the loading or discharging terminal, either as segregated oil, dirty ballast or co-mingled with cargo as it is possible for Charterers to arrange. If it is necessary to retain the residue on board co-mingled with or segregated from the cargo to be loaded, Charterers shall pay for any deadfreight so incurred.

Should it be determined that the residue is to be co-mingled or segregated on board, the Master shall arrange that the quantity of tank washings be measured in conjunction with cargo suppliers and a note of the quantity measured made in the vessel's ullage record.

The Charterer agrees to pay freight as per the terms of the Charter Party on any consolidated tank washings, dirty ballast, etc., retained on board under Charterer's instructions during the loaded portion of the voyage up to a maximum of 1% of the total deadweight of the vessel that could be legally carried for such voyage. Any extra expenses incurred by the vessel at loading or discharging port in pumping ashore oil residues shall be for Charterer's account, and extra time, if any, consumed for this operation shall count as used laytime.

## BILL OF LADING

Shipped in apparent good order and condition by ____________________

on board the ____________________ Steamship / Motorship ____________________

whereof ____________________ is Master, at the port of ____________________

to be delivered at the port of ____________________

or so near thereto as the Vessel can safely get, always afloat, unto ____________________

or order on payment of freight at the rate of ____________________

This shipment is carried under and pursuant to the terms of the contract / charter dated New York/London ____________________

between ____________________ and ____________________ as Charterer, and all the terms whatsoever of the said contract / charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in this shipment.

In witness whereof the Master has signed ____________________ Bills of Lading of this tenor and date, one of which being accomplished, the others will be void.

Dated at ____________________ this ____________________ day of ____________________

____________________
Master