# EXHIBIT 3

| Code name: Intankbill 2003 | | BILL OF LADING | B/L no. __2__ Ref.no. _____ |
|---|---|---|---|
| **Shipper:**<br>FUTURA CHEMICALS TRADING PTE. LTD.<br>20 CECIL STREET № 14-01 EQUITY PLAZA<br>SINGAPORE 049705 | | **Notify Party/Address:**<br>PETSARO CHEMICALS AG,<br>POSTSTRASSE 6, 6300 ZUG SWITZERLAND,<br>ORKA SHORE TANKS MERSIN FREE ZONE | |
| **Consignee:**<br>TO THE ORDER OF THE ECONOMY BANK N.V.<br>AMSTELVEEN | | **Vessel:** M/T HALKI | |
| | | **Port or Place of Loading:** TEMRYUK, RUSSIA | |
| | | **Port or place of Discharge:** ORKA SHORE TANKS MERSIN FREE ZONE, TURKEY | |
| Shipper's Description of Cargo: | Shipper's Weight: | Shipper's Volume: | Date shipped on board: |
| VINYL ACETATE MONOMER IN BULK | 511 900 KG | | |

Original

Clean on Board

Freight Payable as per Charter Party

| Issued pursuant and subject to all terms of the CHARTERPARTY<br>Dated _____26.04.2007_____<br><br>Between _____<br><br>_____ (Owner)<br><br>and _____<br><br>_____ (Charterer)<br><br>Freight is payable in accordance therewith.<br><br>Carrier(Name and Principal Place of Business)<br><br><br>Place and date of Issue:<br><br>Temryuk port (Russia)<br>Dated: 16 MAY 2007 | SHIPPED at the Port or Place of Loading in apparent good order and condition aboard the above Vessel for carriage to the Port or Place of Discharge (or so near thereto as she may safely get) the goods specified above Weight, measure, quality, condition, contents and value unknown.<br><br>IN WITNESS whereof the Master or Agent of the Vessel has signed 3 (THREE) original Bills of Lading all of this tenor and date, any of which being accomplished the others shall be void.<br><br><br>Signature _____ Carrier<br>or, for the Carrier<br><br>ACAR MEHMET<br>_____ Master<br>(Master's name and signature)<br><br>_____ Agents<br>(Agent's name and signature) |

SEE CONDITIONS OF CARRIAGE OVERLEAF

## CONDITIONS OF CARRIAGE

### (1) INCORPORATION and PERIOD of RESPONSIBILITY

All terms, conditions, liberties and exceptions of the Charterparty overleaf referred to, including the Arbitration Clause and provisions regarding lien on the cargo, are hereby expressly incorporated. The Carrier shall in no case be responsible for loss of or damage to cargo howsoever arising prior to loading into and after discharge from the Vessel or while the goods are in the charge of another carrier.

### (2) GENERAL CLAUSE PARAMOUNT

(a) The Rules contained in the International Convention relating to Bills of Lading signed at Brussels on 25 August 1924 (the "Hague Rules") as amended by the Protocol of 23 February 1968 (the "Hague-Visby Rules") and as enacted in the Port or Place of Loading shall apply to this Bill of Lading. Where no such enactment is in force at the Port or Place of Loading, the corresponding legislation at the Port or Place of Discharge shall apply (even if such legislation only relates to outbound shipments). If no such enactment is applicable, the terms of the Hague-Visby Rules shall (subject as is below provided) apply.

(b) If there is governing legislation which applies the Hague Rules compulsorily to this Bill of Lading to the exclusion of the Hague-Visby Rules, then this Bill of Lading shall have effect subject to the Hague Rules.

(c) The Protocol signed at Brussels on 21 December 1979 (the "SDR Protocol 1979") shall apply whenever the Hague-Visby Rules apply to this Bill of Lading.

### (3) GENERAL AVERAGE

General Average shall be adjusted, stated and settled according to the York-Antwerp Rules, 1994, or any subsequent modifications thereof in London unless another place has been agreed in the Charterparty above described.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, error or neglect of the master, pilot or crew.

### (4) NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, Shipper, Consignee or owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.

If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier or its agent may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo, Shipper, Consignee or owners of the cargo to the Carrier before delivery.

### (5) BOTH – TO – BLAME COLLISION CLAUSE

If the Vessel comes into collision with another vessel as the result of the negligence of the other vessel and any act, neglect or default of the master, mariner, pilot or other servant(s) of the Carrier in the navigation or management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of the said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of the said cargo and set off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

### (6) HIMALAYA CARGO CLAUSE

It is hereby expressly agreed that no servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Shipper, Consignee or owner of the cargo or to any holder of this Bill of Lading for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment, and, but without prejudice to the generality of the foregoing provisions of this Clause, every exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant or agent of the Carrier acting as aforesaid and for the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract in or evidenced by this Bill of Lading.

The Carrier shall be entitled to be paid by the Shipper, Consignee, owner of the cargo and/or holder of this Bill of Lading (who shall be jointly and severally liable to the Carrier therefor) on demand any sums recovered or recoverable by such Shipper, Consignee, owner of the cargo and/or holder of the Bill of Lading or any other from such servant or agent of the Carrier for any such loss, damage, delay or otherwise.