UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
SOYSAY SHIPPING CO.                         :
                                            :
              Plaintiff                     :
                                            :         ECF CASE
- against -                                 :
                                            :         07 Civ. 7469 (JGK)
ASTYA INVESTMENTS CO. LTD, and              :
PETSARO CHEMICALS AG                        :
                                            :
              Defendants                    :
------------------------------------------------------X


## DECLARATION OF GRAHAM MICHAEL CRANE

Graham Michael Crane declares under Penalty of Perjury under the Laws of the United States of America as follows:-

1.  I am a partner of the law firm of Ince & Co and a solicitor of the Supreme Court of Judicature of England and Wales. I was admitted as a solicitor in 1975, since when I have practiced in the law of international trade and shipping.

2.  I am instructed by Soysay Shipping Co. Ltd. ("Soysay") in respect of the arbitration commenced between Soysay and Astya Investments Co. Ltd ("Astya") in relation to the events surrounding the discharge of the MV *Halki* at Mersin which was supposed to take place on 22 May 2007. In fact it did not take place until 8 June 2007 once the Owners had obtained a Court Order from the local Turkish Court ordering discharge of cargo.

3. I have been shown the Declaration of Charles Robert Grant Williams dated 20 October 2007. Mr. Williams states that the alleged breach amounts to no more than a breach of delay. With respect, this is not correct.

4. In fact what happened was as follows. On arrival of the vessel on 22 May 2007 at her discharge port of Mersin, the receivers refused to discharge the cargo claiming that the cargo was totally off-spec and that they were rejecting it. There was no delay of the vessel in getting from load port to discharge port. Astya, in breach of its obligations under the charterparty, failed to arrange for the discharge of the cargo.

5. On 25 May, 2007 Soysay invited Astya to carry out a joint survey on the samples taken at the loading port and discharging port. Astya's response was to ignore this and claim damages for the apparent (but unsubstantiated) loss in the cargo value on 1 June 2007. That same day, the Owners' P & I Club gave a guarantee to Astya in respect of the whole sum claimed, namely US$300,000.

6. Notwithstanding this, Astya still did not commence discharge whereupon the Owners received a request from Petsaro AG, the other Defendants to this action, seeking security. It transpired that Astya admitted that they had no title to the cargo and the Owners had to enter negotiations with Petsaro to give a guarantee to them.

7. On 7 June 2007 Owners were informed that Petsaro had made an application to the Turkish Court for an arrest of the vessel and the same day Petsaro provided an invoice

and bill of lading demonstrating that they, and not Astya, were the owners of the cargo.

8. The following day, 8 June 2007, the Owners gave a guarantee to Petsaro and obtained a Court Order from the Turkish Court ordering discharge of the cargo notwithstanding the refusal of the cargo owners to take delivery of the cargo. Discharge accordingly commenced at 1900 hours on 8 June 2007.

9. It can thus be seen from the above that Astya's breach was a refusal to take delivery of the cargo and had nothing to do with delay.

10. As Mr. Williams rightly states in his Declaration, there have been a number of English cases relating to the question as to whether or not demurrage is the sole remedy in relation to the delay of a vessel. Mr. Williams refers to the Judgment of Potter J. in the *Bonde* [1991] 1 LLR. 136 and correctly quotes Potter J. as saying that … "It is a requirement that the Plaintiff demonstrate that such additional loss is not only different in character from loss of use but stems from breach of an additional and/or independent obligation". This is such a case.

11. Mr. Williams goes on to invoke the case of *Inverkip Steamship Co. – v – Bunge* [1917] 2 KB. 193 where it was decided that "the demurrage provisions of the charterparty apply to all situations where the loss suffered by the Owner is a detention of the ship by reason of a failure to load or discharge within the lay days, and it matters not that

the charterer may have been in breach of some other obligation, **so long as that breach resulted in no other kind of loss**" (my emphasis).

12. However, this is precisely what happened to the Owners. The actions of Astya were such as to cause the Owners to lose her next employment. This is recoverable from them. The breach by Astya clearly delayed the ship in embarking upon her next engagement and it caused the ship to lose her next fixture altogether as a result of the operation of a cancelling clause. Under English law this is clearly foreseeable and Soysay will be relying on the leading authority, Cooke on Voyage Charters 3rd Edition 2007 which states at paragraph 21.95 as follows:-

"Since the charterer ought to contemplate that the vessel is likely to be engaged for her next voyage when performance of the charter is preceding, it follows that the damages resulting from the loss of subsequent charters provided that they are ordinary market fixtures at market rates, are not too remote".

13. Reference is made to Lord Herschell's Judgment in the *Argentino* [1889] 14 APP. CAS 519 (a collision case) where he states that "it does not appear to me to be out of the ordinary course of things that a steamship, whilst prosecuting her voyage, should have secured employment for another adventure. And if, at the time of a collision, the damaged vessel had obtained such an engagement for an ordinary maritime adventure, the loss of the fair and ordinary earnings of such a vessel on such an adventure appear to me to be the direct and natural consequences of the collision".

14. The direct and natural consequence of Astya's refusal to discharge the vessel was the loss of the Owners' next charter, which was an entirely foreseeable outcome.

15. In summary, therefore, all of the heads of claim are recoverable by Soysay under English law since the failure to discharge the cargo had nothing to do with any delay and all to do with the failure of Astya to arrange properly for discharge of the cargo.

16. Part of the quantum for the Rule B Attachment relates to the provision for costs for the London arbitration. To the best of my knowledge and belief this amount is a conservative estimate of the likely costs to be incurred by Soysay should a hearing before a London arbitral tribunal prove necessary.

17. I declare under Penalty of Perjury under the Laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of November 2007 in London, England

*[signature]*

Graham Michael Crane