UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

SOYSAY SHIPPING CO.,

             07 CV 7469 (JGK)

       Plaintiff,

  -against-

ASTYA INVESTMENTS CO. LTD., and
PETSARO CHEMICALS AG,

       Defendants.

-----------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ASTYA'S MOTION FOR PARTIAL VACATUR AND REDUCTION OF MARITIME ATTACHMENT

Of Counsel:

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff Soysay Shipping Co.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Manuel A. Molina (MM 1017)

NYDOCS1/293555.1

## PRELIMINARY STATEMENT

This Memorandum is submitted on behalf of the Plaintiff SOYSAY SHIPPING CO. (hereinafter "Soysay") in opposition to the motion filed by Defendant ASTYA INVESTMENTS CO. LTD. (hereinafter "Astya") for a partial vacatur and reduction of security. For the reasons outlined below, the application should be denied.

## INTRODUCTION

The thrust of Astya's position is that the security should be reduced because it purportedly has a defense to a portion of the Plaintiff Soysay's claim under English law.[1] Astya argues that because the Plaintiff is supposedly limited in its recovery just to demurrage, only security for the demurrage portion of the claim should be allowed. That argument, however, should be rejected for three fundamental reasons.

First, Astya's motion is tantamount to a request that this Court adjudicate the merits of Soysay's claim. The merits of the claim, however, are admittedly subject to London arbitration, where the arbitrators will determine the scope of the allowable recovery. It is improper under the guise of a motion to reduce to effectively seek adjudicate on the merits.

Next, Astya is wrong on the law. Astya's attack to the propriety of Saysay's full claim is premised on the *factual* ground that the complained of damages resulted from the Defendant's delay during the discharge of the cargoes in Turkey. Here, Astya suggests that since damages related to a delay in delivery are limited to demurrage, the security should be limited to just that item of claim. But as Plaintiff's English solicitor shows, the root cause of the claim relates to Astya simply refusal to take delivery of the cargo, not to a delay in off loading. In fact, Soysay

---

[1]    Astya concedes that security is warranted here, but only up to the level of $93,156.25.

was compelled to seek an Order from the Turkish Court directing that the cargo be discharged. Thus, as Plaintiff's solicitors persuasively demonstrate, in a situation where damages directly stem from a charterer's *purposeful failure to use the vessel*, English law (as even Astya's own English authorities show) permits a shipowner to recover *all foreseeable damages*, and its recovery is not limited to the demurrage incurred.

Finally, the standard against which a motion for reduction is to be gauged is very high, and essentially requires a showing by the movant that some aspect of the claim is all but frivolous. Defendant's presentation, and the support for its purported defense (given the admitted facts), falls far short of this mark. The delay here is directly attributable to a conscious decision not to arrange discharge, and as such, the damages are not limited to demurrage alone.

For these reasons, all of which are set forth more fully below, the application should be denied. This is not the forum for the adjudication of the merits of the dispute but only whether the Plaintiff has set forth a supportable maritime claim - which it has done. No reduction in the security should not made.


## BACKGROUND FACTS

The factual background to this dispute is relatively straightforward and for the most part undisputed. As the accompanying declaration of Mr. Michael Graham Crane demonstrates, the crucial fact (conspicuously ignored by Astya) that led to the parties' dispute was Astya's refusal to take delivery of the cargo of vinyl acetate monomer at the port of Mersin, Turkey. (Declaration of Graham M. Crane, dated November 9, 2007 ("Crane Decl."), ¶4). It is common ground that the M/V HALKI arrived at the port of Mersin on May 22, 2007. At that time, Astya refused to take delivery of the cargo ostensibly because the cargo had been contaminated.

("Crane Decl., ¶4). Subsequently, Soysay, on May 25, 2007, invited Astya to perform a joint survey on the samples of the cargo taken both at the loading and discharges ports – Astya, however, dismissed the invitation, claimed damages and failed to arrange for the delivery of the cargo at the discharge port. ("Crane Decl., ¶5). In fact, on June 1, Soysay, to secure Astya' purported cargo claim, provided a P&I Club Letter in the sum of $300,000. ("Crane Decl., ¶5). Despite having obtained security from Plaintiff, Astya continued to refuse to take delivery of the cargo. ("Crane Decl., ¶6).[2]  On June 7, Soysay obtained an Order from the Turkish Court directing that the cargo be discharged. Discharge operations commenced later that evening. ("Crane Decl., ¶8).

The foregoing facts demonstrate that, contrary to Astya's position, the complained of breach is Astya's refusal to arrange for the discharge of the cargo, *__not__* a breach of delay in effecting discharge operations. Under English law, Soysay is therefore entitled to recover all foreseeable consequential damages stemming from Astya's breach. ("Crane Decl., ¶¶9-15).

# ARGUMENT

## POINT I

### IN ORDER TO SUSTAIN THE ATTACHMENT, THE PLAINTIFF NEED ONLY SHOW THAT IT HAS A *PRIMA FACIE* MARITIME CLAIM AND NEED NOT PROVE THE MERITS OF ITS CLAIM

It is well established that in order for a plaintiff to maintain an attachment pursuant to Rule B, the plaintiff must have asserted a maritime claim against the defendant that is *prima facie* valid. This requirement is made abundantly clear from Rules A and B and from the recent

---

[2]    Soysay later learned that Astya had no title to the cargo and that the true owner, defendant Petsaro Chemicals AG ("Petsaro"), had made an application to the Turkish Court on June 7 for the arrest of the M/V HALKI. ("Crane Decl., ¶4). On June 8, Soysay gave a similar guarantee to Petsaro.

decisions of the Second Circuit in *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002) and *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006). It is also plain from Rule E that the burden of demonstrating that the plaintiff has a valid *prima facie* maritime claim against the defendant capable of supporting a Rule B attachment is squarely on the plaintiff. Plaintiff easily clears this hurdle here, since it claims damages arising under a maritime contract of charter party with Defendant, which damages are recoverable pursuant to English law, the law of the contract. ("Crane Decl., ¶¶9-15).

Precisely because Astya recognizes that Soysay has met is Rule B *prima facie* showing, it attacks Soysay's claim on the merits by contending that it has a defense to a portion of the claimed damages. This argument is unavailing. First, it is undisputed that the adjudication of the merits rests with English arbitrators who will be applying English law. Second, the dispute between the parties is simple: whether, under English law, the failure of a charterer to take delivery of the cargo amounts to a breach of the charter party such that an owner can recover not only incurred demurrage, but also, all foreseeable consequential damages resulting from the breach. Mr. Crane's opinion clearly supports the latter view, and illustrates that English law is quite clear on the issue, as supported even by Astya's own legal authorities. ("Crane Decl., ¶9-15).

Here, the complained of loss did not stem from a delay *of the discharge operations, because Astya had refused to make any arrangements for the discharge.* Rather, the delay, and thus the damages, flowed from Astya's unjustifiable refusal to comply with its independent obligation to take delivery of the cargo. Thus, to the extent that there is clear support for Plaintiff's claim under English law and that the merits of this dispute are not before this Court,

the movant has failed to provide any basis upon which the security should be reduced, and the Plantiff has fairly met its obligation of pleading a maritime claim for the full security sought.

It is for the English arbitrators to ultimately decide whether, under the facts of this case, Soysay is entitled to recover damages beyond demurrage. Defendant cannot, by the expedient subterfuge of an English solicitor's legal opinion, challenge the merits of Plaintiff's claim here. Accordingly, Astya's motion should be denied in all respects.

**POINT II**

**THE QUANTUM OF THE ATTACHMENT SHOULD NOT BE REDUCED**

The balance of the Astya motion, while characterized as an attack on the quantum of the claim, is little more than a regurgitation of its previous unavailing argument (*i.e.* that to the extent that it believes English law does not support any damages beyond demurrage, Soysay's claim is overblown). This circuitous argument is utterly devoid of any merit, as demonstrated in Point I above, and little further comment is thus necessary.

Before leaving the point, however, some comment on the level of proof required in a motion to reduce would be useful, because the authorities cited by Astya do not, under any circumstances, support reduction in the situation at bar.

At the outset, it is important to bear in mind that the defendant has the greater burden of showing that the amount of security was excessive. *See Benedict on Admiralty* § 3.02[D][7] *citing Whitney-Fidalgo Seafoods v. MISS TAMMY*, 542 F. Supp. 1302, 1304-05 (W.D.WA. 1982) (holding that the defendant's burden in seeking a reduction of an attachment is to supply proof that the quantum attached "is clearly excessive as compared to the claim figure", and finding that where there is a likelihood of recovery of costs, attorneys fees and interest, such

amounts may not be discounted from the claim); *Sea Transport Contractors, Ltd. v. Indus.*
*Chemiques du Senegal*, 411 F. Supp.2d 386, 396 (S.D.N.Y. 2006) (*citing* Rule E(6)).

As outlined above, and despite Astya's effort to come at this same argument from two
different angles, Astya's request for reduction always comes back to the same point – the
proposition that Soysay's claim should be reduced to the demurrage incurred because it believes
that Soysay will not succeed in London arbitration beyond that single element of claim. This
argument is insufficient to meet Defendant's burden, as outlined above. The Crane Declaration
unquestionably demonstrates that the challenged heads of claim are certainly not frivolous under
English law, and given Astya's own cited authority and the undisputed facts, that label might
best describe the motion itself. This is all that Soysay is required to prove. *Rolls Royce*
*Industrial Power (India) v. M/V FRATZIS M.*, 1996 A.M.C. 393, 402 (S.D.N.Y. 1995) (Haight,
J.) (all that the court needs to do is to determine that plaintiff's damages are not frivolous);
*Dongbu Express Co. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996), *citing Bergesen v.*
*Lindholm*, 760 F. Supp. 976, 986 (D.CT. 1991) (holding that all that was required of the plaintiff
was "a fair and reasonable estimate of damages").

To support its argument, Astya offers a plethora of decisions that are, even upon cursory
review, factually inapposite to this case. All the authorities relied upon by Astya involved cases
in which the Court determined that the claims were "frivolous." *See e.g. Rolls Royce*, 1996
A.M.C. at 397; *Bay Casino, LLC v. M/V ROYAL EMPRESS*, No. 98-2333, 1999 U.S. Dist.
LEXIS 22357, *4-7 (S.D.N.Y. Oct. 15, 1999); *Transportes Navieros y Terrestres v. Fairmount*
*Heavy Transport N.V.*, 2007 US. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) (plaintiff failed to
mitigate damages, allowing damages to accumulate). In light of Mr. Crane's declaration, at this
juncture, this Court can only conclude that Soysay's claim is not frivolous and its attachment

must therefore be maintained *in toto*. *Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, 2005 U.S. Dist. LEXIS 25761, *4 (S.D.N.Y. Oct. 25, 2005) (at this early stage in the proceedings, a court "should be reluctant to prejudge the merits of claims based essentially on the pleadings and a sparse record consisting of a few documents, in advance of any discovery. This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country"); *see also Palette Marine, Ltd. v. Pacific Ocean Resources Ltd.*, S.D.N.Y. 06 CIV 13141 (RLC) (*unreported*) (Jones J.).

Finally, Astya's argument that the interest and costs portion of the restraint should be reduced is equally without merit. First, Astya assumes *a priori* that London arbitrators will limit Soysay's quantum of damage to its demurrage head of claim (hence its position that interest and costs should be 25% of the demurrage being claimed). Second, as set forth in the Crane Declaration, the amounts indicated for interest and costs are appropriate for a case of this size (even conservative) (Crane Declaration, ¶16), and essentially mirror similar requests for security for arbitral fees and costs in attachments initiated by defendant's counsel.

## CONCLUSION

The heads of claim being asserted by Soysay are maritime claims which are clearly supported by the facts and English law as attested to by Soysay's solicitor. Astya's motion should be denied.

Dated: New York, New York
      November 9, 2007

                                    FREEHILL, HOGAN & MAHAR LLP
                                    Attorneys for Plaintiff
                                    SOYSAY SHIPPING CO.

              By:                            
                        Peter J Gutowski (PG 2200)