LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
ASTYA INVESTMENTS CO. LTD.
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:    (212) 490-6070
Charles E. Murphy (CM 2125)
Patrick F. Lennon (PL 2162)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SOYSAY SHIPPING CO.,                                    :
                                                        :
            Plaintiff,                                  :
                                                        :        ECF CASE
     - against -                                        :
                                                        :        07 Civ. 7469 (JGK)
ASTYA INVESTMENTS CO. LTD. and                          :
PETSARO CHEMICALS AG,                                   :
                                                        :
            Defendants.                                 :
-----------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL VACATUR AND REDUCTION OF MARITIME ATTACHMENT

Defendant, Astya Investments Co. Ltd. (hereinafter "Astya"), by its undersigned counsel,

Lennon, Murphy & Lennon, LLC, submits the within Reply Memorandum of Law in Support of its

Motion for Partial Vacatur and Reduction of the Ex Parte Order of Maritime Attachment dated

August 23, 2007 (hereinafter "Order") pursuant to Rules E(4)(f) and E(6) of the Supplemental Rules

for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter

"Admiralty Rules").

## PRELIMINARY STATEMENT

Soysay has argued that this Court may not reduce the amount of the attachment from

$334,428.56 to $93,156.25 because it is not allowed to adjudicate the merits of Soysay's claims.

Respectfully, the issue is not how the London arbitrators will ultimately decide the merits of

Soysay's claims. Instead, the issue is whether this Court is satisfied that Soysay has reasonably

estimated its damages in light of the liquidated damages provision of the Contract of Affreightment

(hereinafter "COA"). Notwithstanding Soysay's representations to the contrary, courts are routinely

called upon to make such determinations in the context of motions to reduce security under

Admiralty Rule E(6), which provides that attachments should be reduced for good cause. Under

Soysay's incorrect approach, a court could never reduce an excessive attachment prior to an

arbitrator's issuance a final award on the merits. For the purposes of determining whether the

attachment should be reduced, this Court need only consider the Verified Complaint, the COA, the

undisputed facts, and the governing English law to conclude that a reasonable estimate of Soysay's

damages is $93,156.25 inclusive of interest and costs. [1]

## STATEMENT OF FACTS

For a complete recitation of facts, an explanation of the terms of the COA, and for an

explanation of the applicable English law, reference is made to the supporting Declarations of

Charles Robert Grant Williams dated October 20, 2007 and November 15, 2007, together with the

fourteen exhibits attached thereto.

## ARGUMENT

### THE ATTACHMENT SHOULD BE REDUCED BECAUSE IT
### EXCEEDS THE AMOUNT OF SOYSAY'S LIQUIDATED DAMAGES

This Court should not allow Soysay to circumvent the liquidated damages provision of the

COA by alleging claims against Astya that are not cognizable under the governing English law. For

good cause shown, a reviewing court may reduce an attachment to a more reasonable level *without*

---

[1] Soysay has alleged that its principal claim is $184,428.56 and that it is entitled to interest and costs of $150,000.00. Thus, Soysay's calculation of interest and costs is quite amazing because it exceeds 81% of the principal claim. Based only upon the Verified Complaint, Soysay's claim appears exaggerated. Additionally, Soysay has failed to provide any legal authority in support of an entitlement to security for American lawyers' fees.

2

taking a position on the substantive merits of the case, or as to the recovery available under English law. This was Judge Casey's holding in Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal, 411 F. Supp. 2d 386 (S.D.N.Y. 2006). In Sea Transport Contractors, Ltd., the court held that "[t]hough the Court finds good cause to reduce the amount seized under the Rule B attachment, it takes no position as to the recovery available in the British Courts under British law." Id. at 396. The Court may find "good cause" to reduce the attachment where the amount of security requested, although possibly recoverable in the underlying action, runs contrary to the contract and/or facts upon which the damages are based. See id.; see also Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, 2005 U.S. Dist LEXIS 224, *5 (S.D.N.Y. 2005)(where the plaintiff's estimate of damages has been challenged, the court may use its discretion to apply a reasonable estimate of those damages). Thus, Soysay's argument that the court may not reduce the attachment without first adjudicating the merits is unpersuasive. In this case, it is within the Court's discretion to review the allegations, the contract, and the governing English law in order to form a decision about whether Soysay has reasonably estimated its damages.

For the purposes of a reduction in security under Admiralty Rule E(6), a plaintiff need not prove its damages with "exactitude" but the Court must be satisfied that the plaintiff has reasonably estimated its damages and that "a reduction in security is 'freely granted upon a showing that the [attachment] is excessive.'" Dongbu Express Co., Ltd. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996). In its Memorandum of Law in Opposition, Soysay has failed to persuasively distinguish any of the several decisions from the Southern District of New York that have repeatedly upheld this standard. That is, a plaintiff's claim need not be frivolous in order for it to be reduced. It is enough that the amount claimed in the complaint is inconsistent with the contract's

3

terms. In light of these authorities previously cited by Astya, the suggestion that this Court lacks authority to scrutinize a plaintiff's damage calculation is without merit.

In this case, Soysay sued Astya, *i.e.*, the vessel charterer, and Petsaro, *i.e.*, the cargo receiver, for delays associated with discharge. Importantly, Soysay's claims against Astya are exclusively governed by the Soysay/Astya COA. In contrast, Petsaro was not a party to the COA. Notwithstanding the foregoing, a review of the Verified Complaint reveals that Soysay's claims were poorly particularized. That is, Soysay has made identical allegations against both defendants even though one was the vessel charterer and the other was the cargo receiver. In so doing Soysay alleged that both defendants are equally liable for damages resulting from the cargo receiver's refusal to take and/or arrange for delivery of the cargo. Specifically, Soysay has alleged in its Verified Complaint at ¶ 9 that "The Defendants failed to arrange for the prompt delivery and receipt of the cargo..." This is significant because it is undisputed that since Astya did not have title to the cargo, it would not have been entitled to delivery of the cargo and, therefore, could not refuse delivery. For the reasons explained in the two Williams declarations, the *only* claim cognizable under English law asserted by Soysay against Astya is for demurrage under the COA in the principal amount of $74,525.00.

As the authority in support of a Rule E(6) reduction has been well established, the Court's determination of whether Soysay has reasonably estimated its damages for the purposes this attachment depends upon the Court's reading of the governing English cases, which have been provided by Mr. Williams and Mr. Crane. Upon review, the Court should hold that a reduction in security is appropriate because so long as the relevant period of loading/discharge delay is covered by the COA's demurrage clause, Soysay, as the disponent owner, is limited to a claim for

4

demurrage regardless of the cause of the delay.  Of note, Astya takes no position on what damages

Soysay might be able to recover against Petsaro as cargo receiver.[2]

As more fully explained in the two supporting declarations by Mr. Williams, the only claim

that Soysay has alleged against Astya that is recognized under English Law is for demurrage, *i.e.*

liquidated damages for delay.  In this regard, Mr. Williams demonstrates precisely why Astya's

claim is grossly overstated.  As explained *supra* and at Paragraph 6 of Mr. William's first

declaration, the breach alleged by Soysay was poorly particularized in the Verified Complaint.  The

Crane Declaration better explains the allegations but there still remains some confusion about the

alleged breach by Astya.

Astya's breach is variously described by Soysay in Mr. Crane's Declaration as:

    (a)    In paragraph 4, a failure to arrange for the discharge of the cargo;
    (b)    In paragraph 9, a refusal to take delivery of the cargo;
    (c)    In paragraph 14, a refusal to discharge the cargo;
    (d)    In paragraph 15, a failure of Astya to arrange properly for the discharge of
           the cargo.

The assertion that there was a refusal to take delivery of the cargo is in relation to Petsaro

and not to Astya.  It is undisputed that Astya did not have title to the cargo, was not entitled to

delivery of the cargo and, therefore, could not have refused delivery.  On this basis, therefore, there

is no support for Soysay's allegations (a) through (c).  Consequently, the only breach which Soysay

can properly allege against Astya is for (d) failure to arrange the delivery of the cargo.

Soysay has claimed that it can claim damages in excess of demurrage because it believes

that as a matter of law Astya's breach constituted an independent breach of a term of the charter

party that allows for additional damages.  As explained by Mr. Williams, Soysay has purportedly

relied on the English cases of Inverkip Steamship Co.  v. Bunge & Co., [1917] 2 K.B. 193 and The

Bonde, [1991] 1 Lloyd's Rep. 136.  Of note, these were the same authorities cited by Mr. Williams

---

[2] During the pendency of this motion, Soysay has voluntarily dismissed its attachment case against Petsaro.

in his initial declaration. It appears, however, that what Soysay has actually relied upon is an

incomplete quotation from the textbook Voyage Charters at Paragraph 16.13. *See full quotation*

*from Voyage Charterers attached to Second Williams Declaration as Exhibit 13.* The full

quotation reads as follows:

> A second point of general importance decided in Inverkip Steamship Co. -v- Bunge
> is that the demurrage provisions of the Charterparty applies to all situations where
> the loss suffered by the owner is a detention of the ship by reason of a failure to load
> or discharge within the laydays, and it matters not that the Charterer may have been
> in breach of some other obligation, so long as that breach resulted in no other kind of
> loss. This principle has been applied in Chandris -v- Isbrandtsen-Moller, where the
> Charterer loaded dangerous cargo in breach of the charter and The Delian Spirit
> where the Charterer failed to indicate a berth breach on arrival. In both cases the
> only consequence was a failure to load or unload within the laydays, and it was held
> that the situation was governed by the laytime and demurrage provisions of the
> charter with demurrage payable at the agreed rate after expiry of laytime. *So long as*
> *the relevant period of delay is covered by the agreement of the demurrage, the*
> *owner is limited to a claim for demurrage even when the delay is deliberately*
> *caused ...*

Voyage Charterers §16.13 (3rd ed. 2007)(emphasis added). This extract emphasizes the all-

encompassing nature of demurrage and applies even where the delay is deliberately caused.

Accordingly, the above citation is authority for the proposition that even assuming *arguendo* that

Astya refused to accept delivery as alleged by Soysay, the result would be that Astya would still be

liable only for demurrage.

In respect of the alleged refusal of the receivers to take delivery, Soysay has a discrete action

against Petsaro. It is noteworthy that since Petsaro's dismissal from this case, Astya is unaware of

what actions Soysay has taken, if any, to prosecute its claims against Petsaro. Presumably, Petsaro

has posted full substitute security to Soysay in exchange for the dismissal. Irrespective of the

dispute between Soysay and Petsaro, for the purposes of this motion Soysay has improperly relied

on defaults by Petsaro to advance its proposition that a default by the receivers may be imputed to

Astya. Soysay cannot be permitted to accumulate additional security for its claim against Petsaro

6

by continuing to attach Astya's funds under circumstances where Soysay's demurrage claim against Astya is already over-secured.

Vessel charterers are not responsible for the actions of cargo receivers. In support of this proposition, Mr. Williams has attached the English case of The Adelfa, [1988] 2 Lloyd's Rep 466. *See Adelfa decision attached to Second Williams Declaration as Exhibit 14.* In that case, the owners chartered their vessel for the carriage of grain to Tripoli. On arrival the cargo was rejected, and subsequently arrested, by receivers. Owners incurred significant costs in securing the release of the vessel and sought to claim these from charterers. Of particular importance, The Adelfa court unambiguously held that "there was, of course, a failure to discharge within the laytime, for which the Charterers are liable in damages or in demurrage" but "the submission… is that the charterers are vicariously liable for the delay caused by the receivers and their various actions … This argument in my judgment is misconceived. " As applied to this case, Astya, as charterers, are not responsible for the actions of Petsaro, the receivers, and are, therefore, liable only for demurrage damages. Soysay's efforts to construct a breach of the charter party by Astya by reference to the actions of receivers must fail.

### CONCLUSION

For the foregoing reasons, the Court should partially vacate and/or reduce the Ex Parte Attachment Order pursuant to Admiralty Rules E(4)(f) and E(6) from $334,428.56 to $93,156.25 and hold that the only valid prima facie admiralty claim alleged by Soysay against Astya is for demurrage.

Dated: November 16, 2007
New York, NY

Respectfully submitted,

The Defendant,
ASTYA INVESTMENTS CO. LTD.,

By: _Charles E. Murphy_

Charles E. Murphy (CM 2125)
Patrick F. Lennon (PL 2162)
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
cem@lenmur.com
pfl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on November 16, 2007, a copy of the foregoing Reply Memorandum of

Law was filed electronically and served by mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system or by mail to anyone unable to accept electronic filing. Parties may access this filing

through the Court's CM/ECF system.

By: _Charles E. Murphy_

Charles E. Murphy

8