```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SOYSAY SHIPPING CO.,                        :
                                            :
          Plaintiff,                        :
                                            :
     - against -                            :   ECF CASE
                                            :
                                            :   07 Civ. 7469 (JGK)
ASTYA INVESTMENTS CO. LTD. and              :
PETSARO CHEMICALS AG,                       :
                                            :
          Defendants.                       :
------------------------------------------------------------X
```

## SECOND DECLARATION OF CHARLES ROBERT GRANT WILLIAMS

CHARLES ROBERT GRANT WILLIAMS declares under penalty of perjury under the laws of the United States of America as follows:

1. I refer to my previous Declaration made 20 October 2007. As stated in my previous Declaration, I am instructed by Astya Investments Co Ltd ('Astya') in respect of the prospective arbitration between Soysay Shipping Co Ltd ('Soysay') and themselves in relation to the events surrounding the discharge of the MV "HALKI" at Mersin on or about 22 May 2007.

2. I have been shown the Declaration of Graham Michael Crane dated 9 November 2007. With respect to Mr Crane, his assertion that Soysay are entitled to claim damages in excess of demurrage in respect of Astya's alleged breach is not correct.

3. As I noted in my first Declaration, the breach alleged by Soysay was poorly particularised (paragraph 6 of my first Declaration). Having read Mr. Crane's Declaration, I am now better acquainted with the case brought against Astya. However, it appears to me that there is in Mr. Crane's Declaration some confusion as to the breach alleged against Astya.

4. Astya's breach is variously described in Mr. Crane's Declaration as:

    (a) In paragraph 4, a failure to arrange for the discharge of the cargo;

    (b)    In paragraph 9, a refusal to take delivery of the cargo;

    (c)    In paragraph 14, a refusal to discharge the cargo;

    (d)    In paragraph 15, a failure of Astya to arrange properly for the discharge of the cargo.

5.    In relation, however, to the facts alleged by Mr. Crane in his Declaration, there is no statement that Astya refused to take delivery of the cargo. The assertion that there was a refusal to take delivery of the cargo is made instead against the receivers, Petsaro (paragraph 4 of Mr. Crane's Declaration). Indeed, since Astya did not have title to the cargo, they would not have been entitled to delivery of the cargo and, therefore, could not refuse delivery.

6.    Thus, it is difficult to see the factual bases for the allegations referred to in paragraphs 4(b) and (c) above. The only breach which can, therefore, apparently properly be raised against Astya as Charterers is that they failed to arrange the delivery of the cargo, as alleged in paragraphs 4 and 15 of Mr. Crane's Declaration.

7.    In relation to the proposition that Soysay can claim damages in excess of demurrage, Mr Crane suggests that Astya's breach constitutes an independent breach of a term of the charterparty that allows his clients to claim damages in addition to demurrage. Mr Crane relies on the authority in *Inverkip Steamship Co. –v- Bunge & Co*[1] and in the *Bonde*[2] both of which I have already brought to the attention of the Court in my earlier Declaration. Mr. Crane seeks to apply a different interpretation to Mr. Justice Potter's dictum in the *Bonde* and seeks to support it by use of *Inverkip Steamship Co. -v- Bunge*. At paragraph 11, Mr. Crane refers to *Inverkip Steamship Co. -v- Bunge* [1917] 2 KB 193. He appears to quote an extract from that case in his Declaration. The extract quoted, however, is derived from the text book Voyage Charters at paragraph 16.13 (Exhibit 13). A copy of the quotation is annexed hereto. In my view, the extract quoted should be fuller:

> "A second point of general importance decided in Inverkip Steamship Co. -v- Bunge is that the demurrage provisions of the Charterparty applies to all situations where the loss suffered by the owner is a detention of the ship by reason of a failure to load or discharge within the laydays, and it matters not that the Charterer may have been in breach of some other obligation, so long

---

[1] [1917] 2 K.B. 193
[2] [1991] 1 Lloyd's Rep. 136

> as that breach resulted in no other kind of loss. This principle has been applied in Chandris -v- Isbrandtsen-Moller, where the Charterer loaded dangerous cargo in breach of the charter and The Delian Spirit where the Charterer failed to indicate a berth breach on arrival. In both cases the only consequence was a failure to load or unload within the laydays, and it was held that the situation was governed by the laytime and demurrage provisions of the charter with demurrage payable at the agreed rate after expiry of laytime. So long as the relevant period of delay is covered by the agreement of the demurrage, the owner is limited to a claim for demurrage <u>even when the delay is deliberately caused</u> ..."(underlining supplied)

This extract emphasises the all-encompassing nature of demurrage and, as noted, applies even where the delay is deliberately caused and is authority for the proposition that even if, as alleged, Astya refused to accept delivery, Charterers would still be liable only for demurrage.

8.  I have set out above my understanding of the allegations made by Soysay. For the reasons stated in my previous Declaration, I do not consider that a *"failure to arrange properly for discharge of cargo"* amounts to *"additional and/or independent obligation"* as referred to by Mr. Justice Potter.

9.  In relation to the alleged refusal of the receivers to take delivery, Soysay have a discrete action against Petsaro. Mr. Crane appears to seek to rely on defaults by the receivers in order to advance his proposition that the alleged default and/or refusal taking delivery by the receivers can also be imputed to the Charterers. I do not consider that Soysay, however, can use the default of the receivers to improve their case (and their right to increased damages) against Astya.

10. Charterers are not responsible for the actions of receivers. In the *Adelfa*[3] (Exhibit 14), Owners chartered their vessel for the carriage of grain to Tripoli. On arrival the cargo was rejected, and subsequently arrested, by receivers. Owners incurred significant costs in securing the release of the vessel and sought to claim these from Charterers. Mr Justice Evans held that the *"there was, of course, a failure to discharge within the laytime, for which the Charterers are liable in damages or in demurrage"*[4] but *"the submission... is that the charterers are vicariously liable for the*

---

[3] [1988] 2 Lloyd's Rep 466
[4] *The Bunde* [1988] 2 Lloyd's Rep 466 at 471

>  *delay caused by the receivers and their various actions ... This argument in my judgment is misconceived[5]*".

11. In other words, Charterers are not responsible for the actions of the receivers and are, therefore, liable only for demurrage for failure to discharge within the laytime provided by the charterparty. Soysay's attempt to construct a breach of the charterparty by Astya by reference to the actions of receivers is, in my opinion, without merit.

12. I submit that for the reasons above and for the reasons outlined in my Declaration dated 20th October 2007, the only prima facie claim available to Soysay as against Astya is a claim for demurrage.

13. I have not referred to paragraphs 12-15 of Mr Crane's Declaration. However, for the reasons stated above, I do not consider that question of quantum are relevant to this application.

I declare under Penalty of Perjury under the Laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of November 2007 at London, England.

_____

Charles Robert Grant Williams

---

[5] *The Bunde* [1988] 2 Lloyd's Rep 466 at 471